**C. M. FROST et al., Appellants,**

v.

**The STATE of Texas et al., Appellees.**

No. 10347.

Court of Civil Appeals of Texas.

Austin.

Nov. 9, 1955.

Fulbright, Crooker, Freeman, Bates & Jaworski, Chester M. Fulton, Chas. W. Bell, Houston, for appellants.

Burke Holman, County Atty., Madison Rayburn, Asst. County Atty., Houston, for appellees.

GRAY, Justice.

This is a condemnation case. Appellants were the owners of a tract of land containing approximately 74.6 acres in Harris County. This land was located outside of the city limits of the City of Houston at the intersection of Katy Road and Echo Lane and fronted on Katy Road 1,982 feet. The land was shown to be valuable because of its location in a rapidly developing residential area near the City of Houston. It was also shown that the land was suitable for a large shopping center or for residential purposes.

Katy Road is U. S. Highway 90 and for the purpose of converting this highway into a super highway or freeway appellees sought to condemn a strip of appellants' land fronting on Katy Road and being 195 feet deep and 1,982 feet long, containing 8.87 acres.

No complaint is made of the proceedings had prior to the Commissioners' award. The special Commissioners appointed made an award to appellants: for the value of the land taken $44,350, and for a fence on the land $1,124.50, or a total of $45,474.50. On March 8, 1954, appellee, Harris County, deposited the amount of the award with the Clerk of the County Court at Law of Harris County.

At the trial the parties stipulated that the only issues to be tried were the value, on March 8, 1954, of the land taken, and the damages, if any, to the remainder of the tract.

Various witnesses for appellants and for appellees testified as to the value of the land taken and as to damages to the remainder of the tract. This testimony was sharply conflicting and as to value ranged from a high of $155,351 to a low of $35,-480. Appellants' witnesses testified the taking damaged the remainder of the tract in various amounts while appellees' witnesses testified such value was the same after the taking at it was before.

A jury trial was had and the jury found that: (1) the market value of the 8.87 acres of land taken was $44,330; (2) the market value of appellants' land exclusive of the strip taken, immediately before the taking, was $263,108 and (3) the value of the tract remaining immediately after the taking of the 8.87 acres was $263,108.

A judgment in accordance with the jury's findings was entered.

Appellants here present four points. The first point complains of appellees' argument to the jury, and points two, three and four complain of the refusal of the trial court to give requested instructions to the jury.

Appellees' counsel in his argument to the jury reviewed the testimony of appellants' witnesses as to the value of the strip of land taken and the value of the land before and after the taking and said:

"Gentlemen of the jury the State of Texas wants to pay, and will pay, and must pay, the reasonable value of that land out there, but I tell you gentlemen quite frankly that, if the State of Texas is called upon to pay such stupendous, ludicrous, extravagant, ridiculous prices as that the public is not, nor must it build—there would not be enough money in the public treasury to get this project any further than Addicks."

Appellants objected to the argument, the objection was sustained and the jury was instructed not to consider it.

Appellants say that by making the above argument

"counsel for appellees appealed to the self-interest of the jury. In effect he told the jury that if they found the values testified to by appellants' experts, they (the jurors) and other members of the general public would lose the project, because 'there would not be enough money in the public treasury' to complete it. Counsel, therefore, cleverly, but improperly, told the jury that if they wanted the project built, they must find the values testified to by appellees' experts."

In support of their argument that the jury was influenced appellants say

"It is readily apparent that, notwithstanding the court's instruction, the jury was influenced by the argument in arriving at its verdict. The $44,330.00 value found by them as to the land taken was almost identical with the highest value of $44,350 testified to by appellees' witness Hudson. As stated above, the jury also found, just as appellees' witnesses had testified, that the value of the remainder of appellees' land was the same after the taking as it was before, * * *."

In support of their point appellants cite West v. State, Tex.Civ.App., 150 S.W.2d 363, no writ history. They also cite authorities decided prior to West v. State supra.

West v. State supra was a condemnation suit decided in 1941, but the date of the trial is not shown. There the complained of argument to the jury was:

"* * * [1] 'You are the taxpayers', [2] 'The taxpayers will have to pay the bill', [3] 'You, as taxpayers, are directly interested in this suit', and, [4] 'When you go above $25 per acre, you will be taking the money out of your own pockets' * * *."

This argument was objected to, the objection overruled and it was held that reversible error was presented. The court cited numerous authorities and it clearly appears that the decision was based on the rule that

" '* * * where improper argument has been indulged in, the adverse complaining party is entitled to a reversal, as a matter of law, if under all the circumstances, there is any reasonable doubt of its harmful effect or unless it affirmatively appears no prejudice resulted.' "

In Aultman v. Dallas Railway & Terminal Co., 152 Tex. 509, 260 S.W.2d 596, 600, the Court said that before a judgment will be reversed because of argument the argument must be improper, and must be such as to satisfy the reviewing court that the argument was reasonably calculated to cause and probably did cause the rendition of an improper judgment and said the rule

"'* * * that a reversal should occur unless the court can say that the argument had no effect on the verdict has not been the controlling rule since the adoption of rules 434 and 503, Texas Rules of Civil Procedure. Cases decided prior to the adoption of the Rules have little value as precedents because they were decided under a rule which required a reversal if the court entertained any doubt of the harmful effect of the argument."

In Wade v. Texas Employers Ins. Ass'n, 150 Tex. 557, 244 S.W.2d 197, 200, the Court considered improper jury arguments and referred to arguments said to be "curable" by objection and instruction and to those said to be "incurable" and which are not waived by the absence of objection. This referred to classification appears to have classed inflammatory arguments as "curable" and "incurable" as those " 'bringing before the jury information that they do not have and under the law are not supposed to have.' " The

Court did not adopt the referred to classification but said: "We judge by the degree of the vice, not merely the subject matter of the argument."

Here the complained of argument told the jury that the price appellants placed on their land was "stupendous" etc. and that if the State was called upon to pay such prices there would not be enough money in the public treasury to complete the project. The first part of the argument was quoting from the testimony and we think the latter portion emphasized counsel's opinion that appellants claimed values were exhorbitant.

█ Regardless of how this latter argument is to be classed we think its vice was not of such degree that it was not cured by the instruction. Further we think it cannot be said that the argument "was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case." This latter conclusion is justified by the fact that the values of the land as found by the jury are within the values as testified to by the witnesses which testimony appellants say "was sharply conflicting."

In his charge to the jury the trial court defined market value as follows:

"You are instructed that by the term 'market value,' as used in this charge, is meant the amount of money which the property will bring in the market where it is located when it is offered for sale by one who is not obligated to sell but would sell and is purchased by one who is not under necessity of buying but would buy."

Appellants objected to the definition and requested the trial court to further instruct the jury as follows:

"You are instructed that in connection with determining the market value of the property involved in this suit that you are not limited to considering only the use to which such property has heretofore been put, but you may consider all other uses, if any, to which such property may be reasonably adaptable or applied on March 8, 1954.

"You are instructed that by the term 'market value', as used in this charge, is meant the amount of money which the property will bring in the market where it is located when it is offered for sale by one, who is not obligated to sell but would sell and is purchased by one who is not under necessity of buying but would buy, taking into consideration all of the uses to which it either is or in all reasonable probability will become available within the reasonable future.

"You are instructed that in arriving at the market value of the land to be taken, you can consider the present condition of the locality as to business and demand for property, and also any increase or development thereof that could be expected in the immediate future."

The evidence showed that prior to the trial appellants had grazed cattle on the land and had cut hay thereon but there had been no business development of the tract. There was evidence that appellants had been holding the land for the development of a community center, had planted some 400 live oak trees around the tract and had the intention of calling the project "Live Oak Center." There was evidence that the land was in a rapidly developing community and that it was suited for development for residential and for business purposes.

In the trial court's charge the jury was instructed:

"Your answers to such Issues you will determine from the evidence admitted before you under the rulings of the Court during the trial of this case, and from no other source."

The definition of market value given by the trial court was substantially the definition of that term as set out in State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, 979. Appellants do not say the definition is

not correct but say the requested instructions, or one of them, should have been given. In support of their contention appellants cite City of Austin v. Cannizzo, Tex., 267 S.W.2d 808, 815. In that case there was an existing zoning ordinance prohibiting the use of the property sought to be condemned from being used for commercial purposes. There was also some evidence that there was a reasonable probability that the property would be rezoned to permit commercial development within the reasonable future. The Court said:

"If the trial judge is satisfied from the evidence as a whole that there is no reasonable probability that existing restrictions may be lifted within a reasonable time, he should exclude evidence of value based on use for any purposes other than those to which it is restricted. On the other hand, if it appears reasonably probable to the trial judge that the wants and needs of the particular community may result, within a reasonable time, in the lifting of restrictions, he should admit testimony of present value based on prospective use of the property for purposes not then available. Whenever such testimony is admitted it would not do violence to the definition of 'market value' suggested in the Carpenter case by adding thereto so as to have it read: You are instructed that the term 'market value' is the price which the property would bring when it is offered for sale by one who desires, but is not obliged to sell, and is bought by one who is under no necessity of buying it, taking into consideration all of the uses to which it is reasonably adaptable and for which it either is or in all reasonable probability will become available within the reasonable future. This definition will permit the jury to give such weight to the probability of the lifting of restrictions as it thinks a prospective purchaser would give."

In the above case there was an existing city ordinance prohibiting commercial use of the property. So long as this restriction remained in effect the weight of any evidence relative to future commercial uses of the property was limited and such evidence was of little or no value to a prospective buyer. In this state of the record then evidence that the restriction would, or might be, lifted within the reasonable future was of paramount importance if the jury was to consider evidence of future commercial uses. It therefore appears clear to us, from the language of the Court, that the adding of the suggested instruction to the definition of market value relates to the probability that the restriction might be lifted within the reasonable future rather than to the evidence as to future uses for which the property was suitable. However we do not understand the Court to there say that the added instruction is necessary or that it would be reversible error not to give it if it was requested but rather that it would be permissible and helpful to the jury in weighing the evidence as to restrictions. Here we have no evidence of any restrictions as to the use of the land involved and the refusal of the requested instructions was not error. Our conclusion is supported by the holding in Herndon v. Housing Authority of City of Dallas, Tex.Civ.App., 261 S.W.2d 221, 222, er. ref. There error was assigned for the trial court's refusal to give the following instruction:

" 'You are further instructed that the value of the land condemned is not to be estimated simply with reference to the condition in which the owner has maintained it or the use to which it is put at the time in question, but with reference to any use to which it is reasonably adapted. The best or most valuable use to which the land in question is adapted should be considered.' "

There the trial court had given a correct definition of market value and had admitted evidence showing the various uses to which the property could be put. It was held the trial court did not err in refusing to give the requested instruction and by its refusal

of a writ of error the Supreme Court approved that holding.

In the case here the jury was instructed to answer the issues from the evidence admitted "under the rulings of the Court during the trial of this case. * * *." This instruction afforded the jury the right to give the admitted evidence all the weight it may have thought such evidence was worthy of.

Appellants' points are overruled and the judgment of the trial court is affirmed.

Affirmed.