The STATE of Texas et al., Appellants,

v.

Mrs. Earl HELVEY, a Widow, Appellee.

No. 19.

Court of Civil Appeals of Texas.

Tyler.

Feb. 6, 1964.

Rehearing Denied Feb. 27, 1964.

———◆———

Charles E. Hughes, Sherman, for appellants.

Roy G. Baker, Baker & Bryant, Slagle & Kennedy, Sherman, for appellee.

DUNAGAN, Chief Justice.

This is a condemnation suit in which the State of Texas and County of Grayson (appellants) acquired a right of way easement for highway purposes from Mrs. Earl Helvey, a widow (appellee) for State Highway No. 75; and being unable to purchase same, filed petition for condemnation in the County Court at Law, Grayson County, Texas.

Condemnee, being dissatisfied with the award of the special commissioners in the sum of $2,004.00, appealed to the County Court at Law.

Upon a trial before a jury, judgment was entered in accordance with the verdict of the jury that appellee recover from appellants $5,908.75. The jury's verdict found the value of the 9.649 acres taken to be $4,824.50; the remaining 4.337 acres prior to the taking to be $2,168.50, and after the taking to be $1,084.25.

Appellants, by way of assignments of error 1 to 4, inclusive, claimed the Trial Court erred in overruling appellants' motion for new trial based upon evidence of an unaccepted offer before the jury from the witness, Mrs. Earl Helvey, appellee. The complaint is based upon the testimony of Mrs. Helvey wherein she testified in part on direct examination as follows:

\*  \*  \*  \*  \*  \*

"Q.  Well, what would you say would be the market value?

"A.  Oh, the market value—

"Q.  Now, bearing in mind the price at which—

"A.  We turned down $500.00 once for it.

"MR. HUGHES: As counsel knows, that is not admissible.

"MR. BAKER: I'll ask the witness again—

"THE COURT: I'll sustain the objection and instruct the jury not to consider any offers made for the property.

\*  \*  \*  \*  \*  \*

"MR. HUGHES: If you'll excuse me, Your Honor, we have an objection that possibly should be made out of the presence of the jury.

"THE COURT: Gentlemen of the jury, will you pass into the jury room, please?

"(JURY OUT)

"MR. HUGHES: Before this line of questioning goes further, Your Honor, at this time we move for a mistrial on the basis of an offer that was placed into the record. We had no chance to object to it in advance, in that she did not respond to the attorney's question, and we didn't expect it any more than Mr. Baker did, but we feel that it would prejudice this jury.

"THE COURT: When you rose to your feet I understood that an objec-

tion was made to it then. That's the reason I sustained the objection.

"MR. HUGHES: I made the objection then, but I was not able to make it before she answered the question. In other words, it got to the jury before I could do anything about it, and I'm afraid that on that basis this jury could not clearly consider—

"MR. SLAGLE: Judge, we think the Court could instruct the jury. It is not grounds for mistrial when the Court instructs the jury not to consider it for any purpose whatsoever, and she has testified to what she thinks the value is, and it's more than that.

"THE COURT: I overrule the motion for mistrial. I'm of the opinion that my instruction took care of it all right.

"MR. HUGHES: Your Honor, we wanted to be very clear that we made this motion. We feel that it was such a matter that the jury could not remove it from their minds. We have made our objection and we properly except to the Court's ruling.

"THE COURT: All right."

Subsequently, Mrs. Helvey continued to testify on direct examination as follows:

"Q. Well, can you give us any figure as to what you think the reasonable cash market value of this remaining tract was immediately after the taking in your best judgment?

"A. Well, it would have to be $300.-00 or more, anyway. Would that answer it?

"Q. Well, do I understand you now to say that it would be worth $300.00 an acre less after the taking?

Objection here was made by Mr. Hughes that it was a leading question and the Court sustained the objection. Continuing:

"MR. BAKER: I'll try to get at it another way. Now, let me go at it this way again, because I know this is difficult for you to follow. It is even for us lawyers. We established by your testimony what in your judgment was the value of, in your opinion, valuation of land is an opinion. What in your opinion was the value of this particular 4 acre tract immediately before the taking. Now, immediately after the taking what do you think was the reasonable market value of this tract of land that was left to you?

"A. Well, we refused $500.00 for all of that tract."

At this point the judge sent the jury to the jury room and out of the presence and hearing of the jury Mr. Hughes again presented his motion for mistrial for the same reason that he previously gave and further that such error would prejudice the jury regardless of the judge's instruction. The court stated that when the jury returned he would instruct them again not to consider this evidence and stated further that he would like for counsel to instruct his witness not to testify concerning any offer and the witness answered "I'm sorry." Mr. Baker, in addressing himself to his client, Mrs. Helvey, said "That's all right. You just don't know. We can't talk about offer * * *. Now, we're just talking about your opinion. * * *" The Court said "let's don't go any further than to instruct her not to testify concerning any offer." Mr. Baker replied "Well, I'm trying to save further trouble." The jury returned to the jury box and the court instructed them as follows:

"Gentlemen of the jury, you're instructed not to consider for any purpose in your deliberation any question made as to any offer and counsel for condemnee as well as counsel for condemnor join in asking the Court to instruct the jury concerning that so that you will be sure to eliminate any such answer from your mind of your con-

sideration during your deliberation. The condemnee has asked for a ten minute recess. If you'll bear in mind the previous instruction the Court has given you, I'm going to excuse you for ten minutes and if you will remain in the hall until the bailiff calls, please."

During this proceeding, Mr. Hughes stated "Your Honor, we would be glad to agree to a ten minute recess if he wants to talk to his witness." From the record, we would presume that this ten minutes recess was granted for the purpose of Mr. Baker talking to his client in regard to this matter and that he did so. On cross-examination of this witness, Mr. Hughes propounded the following question:

"Q. Has it ever been used for any other purpose except farm land?

"A. Well, like I said, they tried to buy it off of us."

Mr. Hughes then said: "Your Honor, we are going to have to make the same motion" and the court again sent the jury to their room and the witness answered "What can I say?" Now with the jury out, Mr. Hughes again moved for mistrial for the reason that an offer had again been drawn to the attention of the jury.

"THE COURT: I instructed counsel to instruct his witness not to make any reference to offers for any purpose.

"MR. SLAGLE: We both told her not to talk about any offer for purchase. All she said in response to his question was they tried to buy it off us and we have told her not to talk about any offers for sale."

The court overruled appellants' motion for mistrial and instructed the jury again not to consider for any purpose during deliberation any offer to buy the land in question.

Six witnesses testified in the trial as to the value of the subject property. The appellants used two expert witnesses, Stanley Joe Hayes and Steve Gremmels. The ap-

pellee and owner, Mrs. Earl Helvey, testified, as did her son, Cleo Giles. In addition, the appellee used two expert witnesses, T. G. McGraw and M. O. Belden.

The appellants based their case upon the premises that the highest and best use for the subject land, and the use for which it was adapted, was for agricultural purposes and that its value was limited to that use. Testimony was received supporting this premise.

It was appellee's contention that the highest and best use for the subject land was either industrial or residential development and that it was adapted to either or both such uses and there were witnesses who so testified. The testimony of the witnesses as to the value of the strip taken was from $173.00 per acre to $800.00 per acre. Appellee's two expert witnesses, McGraw and Belden, testified that the value of the strip taken was $500.00 per acre and Mrs. Helvey and her son placed the value at $800.00 per acre. Appellants' expert witness, Hayes, testified to a value of $173.00 per acre and expert witness, Gremmels, testified to a value of $235.00 per acre.

█ It is settled that evidence of unaccepted offers to buy the land involved is not admissible in a condemnation suit. Lower Nueces River Water Supply District v. Sellers, et ux, Tex.Civ.App., 323 S.W.2d 324; Hanks v. Gulf, Colorado & Santa Fe Railway Company, 159 Tex. 311, 320 S.W.2d 333.

Appellee does not question that rule, but contends that the error became harmless because of the instruction of the Trial Court. Appellants contend that, by virtue of the repeated testimony of offer of sale in the face of the court's ruling and instruction to the jury, same was impressed in the jury's mind to such extent that it could not be cured by the court's instructions.

█ The question of whether or not this error was calculated to cause and probably did cause the rendition of an improper

judgment in the case is a matter for the court to determine upon the whole record in the case. Rule 434, Texas Rules of Civil Procedure. Lower Nueces River Water Supply District v. Sellers, et ux, supra; Walker v. Texas Employers' Insurance Association, 155 Tex. 617, 291 S.W.2d 298.

Before an error may be made the basis of reversing a Trial Court judgment the appellate court must be satisfied that the error complained of "was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case." Reversal may not be predicated upon a simple showing that error occurred and that the jury returned a verdict in some respects favorable to the party which the error was reasonably calculated to help. If it could, the further provision of Rule 434 and 503 of the Rules of Civil Procedure that it must also appear that the error "probably did cause the rendition of an improper judgment" would be meaningless and pointless. Walker v. Texas Employers' Insurance Association, supra.

In the case of The State of Texas v. Girdner, et ux, Tex.Civ.App., 287 S.W.2d 706, which also was a condemnation suit and which also originated from the Grayson County Court at Law, wherein error was claimed by appellant in the overruling of its motion for mistrial based on evidence of the unaccepted offer placed before the jury by counsel for condemnees. Mrs. Girdner, on direct examination, testified that she knew Mr. Estes and that he offered her in excess of $220.00 per acre for the place. Appellant objected and the court sustained the objection and instructed the jury not to "consider any specific offer testified to by the witness for any purpose in your deliberations." At the instance of appellant the jury was then sent out and appellant moved "for a mistrial, because of the highly prejudicial and inflammatory nature of the testimony of an unaccepted offer, denying the counsel for the State of Texas the right of cross examination", etc. Such motion was overruled and an exception taken.

In discussing this point the court said:

"The only question is whether the instruction cured the error. There is a presumption that the jury obeyed the instruction and the only question is whether the evidence is of such a nature that it was clearly calculated to inflame the minds of the jury, and is of such a character as to suggest the impossibility of withdrawing the impression produced thereby on the minds of the jurors." (Citing authority for such holding.)

The court held it was their opinion that the error was cured by the instruction.

The case of Lower Nueces River Water Supply District v. Sellers, supra, merits discussion as the court there was faced with a similar record that we are faced with in this case. However, we think that the cases are distinguishable. The "Nueces case", as we will hereafter refer to it, was also a condemnation case involving land located in Live Oak County, Texas. Appellant in that case complained of the testimony of appellees' witness, Alvin McNair; that he had offered appellees $400.00 per acre for the land in question, which was refused. Appellant objected on the ground that the testimony related to an unaccepted offer to purchase. The court overruled appellant's objection, and the witness referred to the offer three times during the morning, and each time appellant objected thereto. During the afternoon, after much argument, the court instructed the jury not to consider the testimony. The record further reflects that appellee's counsel in the closing argument to the jury referred to this excluded testimony and called attention to the fact that this offer had been made and refused, at which time appellant moved for a mistrial. The court again, after considerable argument of counsel, instructed the jury not to consider such offer by the witness, McNair. In discussing this point the court said:

"We are not unmindful of the fact that other witnesses of appellees valued

the land higher than did McNair, and that the verdict of the jury is within the range of such witnesses, nevertheless, the undue prominence and importance McNair's testimony was given in having it brought to the attention of the jury in the closing argument, thus forcing appellant to renew its objection, and by the court's retiring the jury for another argument thereon before again instructing the jury, we think, the matter was impressed at least upon the minds of the jury that it would be most unlikely that they could remove it from their consideration. Therefore, considering the record as a whole, we have reached the conclusion that the error complained of was harmful to appellant within the meaning of Rules 434 and 503, T.R.C.P."

In the "Nueces case", the testimony as to an unaccepted offer went before the jury on four different occasions and was even argued before the jury; where the Trial Court allowed such evidence to go before the jury on three different times "during the morning", over the appellant's objection, and where "during the afternoon", after much argument, the court finally instructed the jury not to consider the testimony; where after all of this, the condemnee's counsel referred to the offer in his argument to the jury and the court, instead of promptly instructing the jury not to consider such argument, retired it, heard considerable argument, and then finally brought the jury back and instructed them not to consider such offer.

In the "Nueces case," we have a situation where the testimony as to an unaccepted offer was given by the very person who made the offer and was definite, where such testimony was purposely and premeditatedly given by the witness and was encouraged to do so by the condemnee's counsel.

■ In the case at bar, each time the witness testified to the unaccepted offer the court promptly excluded the testimony upon appellants' objection and each time instruct-ed the jury not to consider this testimony for any purpose in their deliberation. The attorneys for the appellee not only did not refer to this testimony in the argument before the jury, but they joined the appellants' attorney in asking the court to instruct the jury not to consider such testimony. Further, Mrs. Helvey did not testify that she had been offered $500.00 per acre for this land. She first said "We turned down $500.00 once for it" and the second time she mentioned it she testified that "we refused $500.00 for all of that tract." The offer Mrs. Helvey testified about would be considerably under the value the jury found it to be.

There was competent evidence from other witnesses as to value to support the jury's findings. Considering the record as a whole, we cannot say that this testimony, in view of the prompt action of the court, "probably did cause the rendition of an improper judgment" by influencing the jury to return a verdict it probably would not otherwise have returned. We indulge in the presumption that the jury obeyed the instruction of the court, joined in by attorneys for all parties, not to consider this testimony for any purpose during this deliberation.

Appellants' assignments of error 1 through 4 are respectively overruled.

Appellants' fifth point is without merit. Appellants contend that the court erred in admitting over condemnors' (appellants) objection evidence of the sale price of a tract of land from Dee Patterson to Foxworth-Galbraith Company. Appellants contend that the Patterson sale was not a comparable sale. The Helvey tract of land that is involved in this lawsuit had a frontage of 1,631.9 feet on U. S. Highway 75 which the evidence shows to be the second busiest stretch of highway in Grayson County with the daily traffic count in excess of 5,000 vehicles. This was unimproved land which was located about half way between Sherman and Howe and about one and one-half miles north of the Patterson property and

the testimony shows it to be cow pasture. In the past it has been used as farm land.

The record contains evidence of sales of two other properties which the court permitted as evidence of the sales of property comparable to the subject property. One of these tracts is what is known as the Patterson property which was located prior to the sale about one and one-half miles south of the subject property, and which sold for $1,000.00 per acre for residential development. The evidence shows in reference to the Patterson tract that, at the time of the sale of this tract to Foxworth-Galbraith Company, Mr. Patterson owned a farm about one mile south of the subject property which fronted on Highway 75; that Mr. Patterson had a brick home on it and that he had sold a number of acres to Foxworth-Galbraith Company; that the tract he sold to Foxworth-Galbraith Company did not have any improvements on it; that prior to the sale, it was open pasture land, also about one-half mile north of the city limits of Howe; that it had no utilities on it except the electric line that runs along Highway 75.

The rule has been well stated in 16 Tex. Jur., page 589, Section 258:

"Where testimony is given showing that other land is so similarly situated as to afford a fair basis of comparison the values of other land in the vicinity, as they appear from the prices obtained for it, may be deposed to in order to show that the witness' estimate of the value of the property in controversy is fair and reasonable."

Appellants argue that the two tracts are not comparable, in that the Patterson tract of land was off an improved farm; however, the evidence shows that the tract itself that was sold was unimproved. Appellants further point out the lack of similarity between the Patterson tract and the Helvey tract. (1) The Patterson land was close enough to the city of Howe for city utilities while the subject land was not. (2) The Patterson land was capable of being annexed and in fact was annexed while the subject land could not be. (3) The two properties were not subject to the same type of development. Appellee offered two expert witnesses on land value and they testified that the Dee Patterson tract that was sold was comparable to the Helvey tract. Mr. Hayes, one of appellants' expert witnesses as to value, testified that the Patterson tract was not comparable to the subject property because the Patterson land was closer to Howe. The following question was propounded to him:

"All right. The land was the same, was it not?"

The witness Hayes answered:

"Well, I think most of the land between here (Sherman) and Howe is all the same, yes sir."

It is appellee's position that the Patterson tract and the subject land were comparable. (1) The two tracts were located on Highway 75 between Sherman and Howe and within less than a mile or mile and a half of each other. (2) At the time the Patterson tract was sold, it had no improvements on it. (3) That at the time it was sold, the Patterson tract, like the subject property, was not in the city limits. (4) That at the time it was sold, the Patterson tract was just pasture land. (5) That at the time it was sold, the Patterson tract, like the subject property, did not have any city utilities.

■ It is the general rule that an expert witness, having testified to an opinion, is permitted to give in evidence, either on direct or cross-examination, an account of the basis upon which he founded his opinion. If this testimony happens to be competent for that purpose, it is admissible as independent evidence upon the issues in the case but even if not so competent, it is still admissible as giving the basis for the previous opinion testified to and thereby enabling the jury to test the value of the opinion evidence. Hays v. State, Tex.Civ.App., 342 S.W.2d 167.

An expert value-witness, having been qualified to express an opinion as to value of land being condemned, should be permitted to give details of sales upon which he bases such opinion after he has stated that the sales are of property sufficiently comparable to the property involved for appraisal purposes. Hays v. State, supra.

It may safely be said that no two tracts of land are exactly alike. The question of whether or not they are sufficiently similar to afford a fair and reasonable basis for consideration, or shedding light on the value of the land in question, is a matter within the sound discretion of the Trial Court.

Therefore, having examined the entire record in this case, it is our opinion that appellants' objections go to the weight, rather than the admissibility, of the evidence objected to. State of Texas v. Morse, Tex.Civ.App., 342 S.W.2d 165.

In our opinion, the testimony with reference to the Patterson property being closer to Howe and its utilities did not affect the comparability between it and the subject property, except as to value; and we think it is apparent that the jury carefully and fairly weighed this evidence, because the verdict was based upon the finding that the subject property had only one-half the value per acre as that of the Patterson property.

We do not understand that it is required that two tracts of land must have identical value to be comparable. If such were the law, for all practical purposes, it would be difficult to prove the value of the land by the sale of other property, no matter how similar they might be, because very few tracts have identical values, there always being some facts making one tract of land a little more or a little less desirable or valuable than the adjoining property. We think the testimony as to the sale of the Patterson property meets the tests of similarity required for admissibility as substantive evidence of the value of the Helvey property as well as to show the factual basis upon which the expert value witnesses founded their opinions.

The judgment is affirmed.