Julius **BRUNER** et ux., Appellants,

v.

The **STATE** of Texas, Appellee.

No. 16634.

Court of Civil Appeals of Texas.

Fort Worth.

May 7, 1965.

Rehearing Denied June 11, 1965.

Martin & Tackett, and Harold D. Hammett, Fort Worth, for appellants.

Waggoner Carr, Atty. Gen. of Texas, and Hawthorne Phillips, Stanton Stone, T. B. Wright, Carroll R. Graham, William R. Hemphill, Fred M. Talkington, F. William Colburn, Austin, for appellee.

MASSEY, Chief Justice.

This is a condemnation case, from the judgment in which condemnees Julius Bruner and his wife appealed because of their dissatisfaction with the amount awarded for the property taken by condemnor for highway purposes. Involved is only the value of the property taken, there being no issue on dimunition of the value of the remainder of the condemnees' property.

Judgment affirmed.

The main questions presented on appeal consist of complaints because of the exclusion of testimony. Among such was the testimony of the condemnees' expert witness L. G. Key as to his estimate of the value of the property taken. This exclusion was error, but not reversible error. Additional was evidence tendered by this and other expert witnesses concerning the amounts for which property, allegedly comparable, had been sold in the vicinity of that condemned. There were five sales of such property, according to condemnees'

theory, and all were excluded. The trial court excluded evidence bearing upon the sale of one parcel, a 21 acre tract, on the theory that the evidence established a trade of lands rather than a sale or sales. The court excluded evidence bearing upon the sale of the other four parcels, as well as the 21 acre tract, because each of the five parcels had "railroad frontage", i. e., abutted directly upon existing railroad facilities or was very near to trackage. The condemned property was between one-quarter mile to one-half mile distant from existing trackage.

In addition, but coupled with the aforesaid complaint(s) and of concern if it becomes necessary in the test of whether the foregoing, as error, amounts to reversible error under the provisions of Texas Rules of Civil Procedure 434, (that is, that the exclusion of condemnees' evidence was reasonably calculated to cause and probably did cause the jury to return a verdict other than the verdict it did return had such evidence been admitted) is condemnees' contention that the trial court was unduly liberal when he permitted the condemnor to introduce evidence showing amounts for which property, allegedly comparable, had been sold in the area near the condemned property. Condemnees claim that said property, two tracts sold severally and by different grantors, was not comparable to that condemned and hence the sales did not amount to comparable sales,—but that in any event, though it be conceded that evidence thereof was properly admitted, the reception of such evidence by the jury on a trial pursuant to which there had been excluded from their consideration the aforementioned proffered evidence of condemnees demonstrates that condemnees sustained such prejudice that the error claimed was reversible.

To aid in understanding the situation, we include for purposes of the opinion a map or plat, drawn to scale so that the location, shape and size of the aforementioned tracts of property may be visualized.

In the map or plat may be observed two tracts located in the north and northwest, the sales of which were received by the trial court upon tender of the condemnor as comparable sales. The other four tracts shown by the map or plat represent property, the sales of which were tendered as part of the evidence of condemnees. The fifth tract, heretofore mentioned, lies further south and is not shown. Shown is the location of the highway for purposes of which the condemnees' land was taken, being a freeway-type facility. The amount of land taken was 33.881 acres out of the 439 acre total belonging to condemnees.

Preliminary to discussion we desire to cite certain language from the case of Hays v. State, 342 S.W.2d 167, 170 (Dallas Civ. App., 1960, writ. ref., n. r. e.), as follows: "Evidence of sales of comparable properties may be offered under three conditions: (I) on direct examination of expert or lay witnesses as independent substantive evidence of the value of the property to which the comparison relates, or (II) on direct examination of the value-witness to give an account of the factual basis upon which he founds his opinion on the issue of value of the real estate in controversy, or (III) on cross-examination of the value-witness to test his knowledge, experience and investigation and thus affect the weight to be given to his opinions."

■ In view of the majority opinion of the Supreme Court in State of Texas v. Oakley, 163 Tex. 463, 356 S.W.2d 909, 95 A.L.R.2d 1207 (1962), we believe that it is now established that in condemnation cases an expert value-witness, after having been qualified as such, is not to be so limited on direct examination that he cannot go into details of investigation and findings on the matter of comparable sales and testify as to what knowledge he acquired by way of hearsay concerning the prices paid as consideration therefor, but that he may do so provided such evidence is received for consideration by the jury with substantial safeguards against any misuse.

Even before such opinion by the Supreme Court, a value-witness was always permitted to give his opinion of the value of the property condemned, after he had been qualified as an expert, leaving any testimony in connection with matters taken into consideration in arriving at the opinion value given, such as hearsay prices paid in comparable sales, etc., to be developed on cross-examination. This is the Condition III mentioned in the case of Hays v. State, supra.

In view of the Supreme Court's decision in Oakley, it would appear that such testimony may also be given under Condition II (in Hays v. State) and during the course of direct interrogation, provided there are substantial safeguards against any misuse or misconception on the part of the jury concerning the value of such testimony. In the Oakley case it was held that such substantial safeguard was afforded by the following instruction of the court to the jury: " 'You are instructed that testimony by witnesses not having first hand knowledge of the matter stated that certain properties had sold for certain prices shall not be considered as evidence that such properties have sold or that such properties have sold for the prices stated, or as evidence of the market value of the property involved, but may only be considered as being information which the witnesses testified they gathered for the purpose of forming an opinion of the market value of the property involved.' " What we have stated hereinabove relates to testimony as to prices of comparable property which the trial court permits. It would not have application to excluded testimony. Later in this opinion we will discuss the propriety of excluding such testimony upon the court's decision that the property sold is not sufficiently comparable to that condemned.

■ As applied to the tract shown by the map or plat to be located in the southwest corner of condemnees' 439 acres an explanation is warranted. Its size is 21

acres. The land formerly belonged to condemnees. It was conveyed, as in six separate parcels, to grantees named in the instruments of conveyance. However, as shown by the evidence in condemnees' bill of exceptions, it amounted to a single sale from condemnees' standpoint. The railroad company, as owner of the trackage adjacent thereto, desired the land for development as industrial property. It agreed with condemnees on a valuation for purposes of their sale of the entire 21 acres, at $2,500.00 per acre. It was further agreed that condemnees would receive this price, per acre, from third persons. Reason therefor was that the railroad company owned property in other states or locations in this state which said third persons desired to buy, and for tax purposes there was an advantage to be realized in having said third persons pay the cash for the condemnees' land, but simultaneously to deliver title thereto to the railroad company in exchange for the latter's property they actually desired. This was done, condemnees receiving the agreed price for their land, but the record title thereto passing through the hands of said third persons and thence into the hands of the railroad company. Between the third persons and the railroad company the transaction was an even trade of properties, but as between the condemnees and the other persons it was a bona fide sale. If the property of the condemnees thereby transferred was comparable to the property condemned and under consideration in the present instance it would constitute a comparable sale.

The nature of the proof relative thereto tendered by the condemnees in their bill of exceptions was such that it amounted to independent substantive evidence of the value of the 21 acres in that the testimony as to price received by the condemnees was from original parties. In other words the testimony was not hearsay, but was direct and independent substantive evidence. It therefore would be material and relevant to the ultimate issue to be determined, i. e., the value of the property taken in condemnation,—through additional satisfactory evidence to the effect that such property was comparable to the 21 acres. Appellees contend that such additional evidence was supplied. Unless the trial court was warranted in excluding it, under a proper judicial determination that the properties were not truly comparable, error would be apparent and reversibility would depend upon applicability of T.R.C.P. 434.

Such 21 acre tract and the other four tracts as to which the condemnees tendered evidence as comparable sales, or sales of comparable property, in support of the witnesses' stated opinion on the market value of the land condemned, were either adjacent or near-adjacent to existing railroad trackage. The condemned property was over a quarter of a mile removed therefrom. Part of it was at a considerably greater distance. Testimony from an agent of the railroad company, however, was to the effect that trackage would be made available to said portion of condemnees' total acreage as and when it might be developed industrially. The same thing applied to all of condemnees' property. There was no issue made, but the evidence undisputably established that the highest and best use of all of the condemnees' property, including that taken, was for industrial development. As of the date condemnees' land was taken lack of convenient availability of water, sewer and gas hampered its development as such. It was shown that the condition will be remedied in the not too distant future. All the tracts as to which condemnees tendered evidence as comparable property either have some or all such utilities, or will probably have such at an earlier time than that condemned. It was established by the evidence that a considerable sum would be necessary to be expended in order to have such services extended to said area. All such as presently exist lie south of the nearest trackage.

■ A discretion is lodged in the trial court relative to whether evidence tendered purporting to show sales of comparable property to that condemned shall or shall not be admitted. Chaney v. Coleman, 77 Tex. 100, 13 S.W. 850 (1890); City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808, 816 (1954); McCormick & Ray, Texas Law of Evidence, 2d Ed., p. 371, "Similar Acts and Transactions", § 1524, "Sales of Similar Property to Evidence Value", (1st Ed., p. 908, § 699); 118 A.L.R. 869 and 174 A.L.R. 386, Annotation: "Admissibility on issue of value of real property of evidence of sale price of other real property". In other words there is an area in which such character of evidence constitutes such that the judge presiding over the trial court has the final decision upon the question of whether the subject matter of the sale or sales does or does not qualify as similar property to that condemned. Within such area it is the trial court's exclusive discretion to rule upon whether the evidence tendered shall or shall not be admitted where an appellate court should not disturb the decision the trial court rendered regardless of whether the appellate judges believe it would have been proper to have ruled in a manner other than the trial court did rule. Within such area the trial court could not be held to have abused his discretion whichever way he might rule. We are of the opinion that condemnees' tendered evidence relative to comparable property sales fell within such area. That being true we hold that no reversible error resulted because of its exclusion. In this connection see also 22 Tex.Jur.2d, p. 422, "Eminent Domain", § 300, "—Comparison with sales of other land in vicinity". Rayburn, Tex.Law of Condemnation, p. 382, § 117, "Market Sales, Comparative Market Values".

■ Testimony tendered by the condemnees' witness L. G. Key included his opinion of the value of the property condemned. That opinion, independently proffered, as shown by a bill of exception, was not necessarily conditioned upon consideration of the price paid for other property on independent sales excluded by the trial court. This exclusion was error. Apparently it was inadvertently excluded as the result of some confusion. The witness was undoubtedly qualified to give his opinion. We have tested the prejudice to the condemnees resulting from the exclusion of Mr. Key's opinion. In light of the whole record we have concluded that the effect of the exclusion was not such that it amounted to reversible error under the provisions of T.R.C.P. 434. Condemnee Bruner and two other expert witnesses for appellees testified as to value. As already noted, they were not allowed to testify concerning specific sales of property they considered comparable.

We have stated hereinabove that there is an area in which admissibility of evidence bearing upon sales of allegedly comparable property lies exclusively within the province of the trial court, i. e., an area where the appellate court would err should it assume the right to reverse the trial court's decision upon admissibility for it could not constitute an abuse of discretion. What was said in that connection would have full application to evidence upon allegedly comparable sales tendered on the trial by condemnor, and admitted by the trial court. These were sales of two tracts, those shown at the extreme top of the map or plat made a part of this opinion; that is to the north and northwest of the condemned property. Reception of such evidence would not be error.

■ As heretofore mentioned, it was not a matter of dispute between the parties as to the highest and best use of the condemned property, for it was established and not disputed that it should be developed as industrial property. Condemnee Julius Bruner tendered his own testimony to the effect that he purchased the property in 1948 with the purpose of so developing it. Such proffered evidence was excluded. Condemnees could not have been prejudiced thereby and point of error complaining of the exclusion is overruled for this rea-

son. Bruner's testimony to the effect of certain steps he had taken concerning plans for such development, including the expenditure of funds for surveys, mapping the property, etc., prior to the date the condemnor took the same was likewise excluded. The proffered testimony related to "paper planning" only, being wholly speculative even though professional engineering expense had been incurred incident thereto. The paper study and map of the engineers was also tendered. It was excluded. The condemnees had done nothing toward altering the surface or subsurface of the property, nor had any improvement been placed upon it pursuant to such plans. Had the matter of highest and best use of the condemned property been at issue the proffered evidence might have been admissible if the tendered thereof had been limited to such purpose. Even so, "how the property might best be developed" was not a matter for the jury's consideration. Tender was not limited as to purpose anyway. The evidence was not relevant to a matter at issue between the parties. The trial court did not err in excluding it. Lower Nueces River Water Supply District v. Collins, 357 S.W.2d 449, 452 (San Antonio Civ.App., 1962, writ ref., n. r. e.) and authorities cited.

The single special issue submitted to the jury inquired, as follows: "From a preponderance of the evidence what do you find was the market value of the strip of land condemned by the state for highway purposes at the time it was condemned, considered as severed land?" "Market value" was defined as "the price the property will bring when offered for sale by one who desires to sell but is not obliged to sell, and is bought by one who desires to buy, but is under no necessity of buying."

The trial court's definition given the term "market value" is the Carpenter case definition. State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, 979 (1936). There was no complaint made of the definition given. Condemnees filed no objections to the court's charge. They did, however, tender a specially requested instruction, which was not given. It read: "You are further instructed that the term 'market value' as used herein means the price which the property would bring when it is offered for sale by one who desires, but is not obliged to sell, and is bought by one who is under no necessity of buying it, taking into consideration all of the uses to which it is reasonably adaptable and for which it either is or in all reasonable probability will become available within the reasonable future." The requested definition is one suggested in certain circumstances in City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808, 815 (1954), where the following language appears: "On the other hand, if it appears reasonably probable to the trial judge that the wants and needs of the particular community may result, within a reasonable time, in the lifting of restrictions, he should admit testimony of present value based on prospective use of the property for purposes not then available. Whenever such testimony is admitted it would not do violence to the definition of 'market value' suggested in the Carpenter case by adding thereto so as to have it read: (here is quoted a definition identical to that appellees requested)."

■■ Even though we consider appellees' right to complain as not having been waived by a failure to object to the definition which was given, yet would we overrule their point of error which complains of the failure to give a definition like that suggested by Cannizzo. No case they have cited holds that it was error to give the definition suggested by the Carpenter case; all are cases where the definition suggested in Cannizzo was given and where the appellate courts rejected contentions of error because such was done. They do not constitute any authority for condemnees' contention that error existed in the refusal to give such definition.

Judgment is affirmed.