**G. H. MELTON et ux., Appellants,**

v.

**The STATE of Texas, Appellee.**

**No. 151.**

Court of Civil Appeals of Texas.

Tyler.

Oct. 14, 1965.

Rehearing Denied Nov. 4, 1965.

David M. Kendall, Jr., Woodruff, Hill, Bader & Kendall, Dallas, for appellants.

Waggoner Carr, Atty. Gen. of Texas, Fred M. Talkington, Asst. Atty. Gen., Austin, for appellee.

DUNAGAN, Chief Justice.

This is an appeal from a judgment entered by the County Court of Hopkins County in a condemnation case.

The appellee, The State of Texas, was plaintiff in the court below, but will here-

after be referred to as the state, and appellants were defendants therein and will hereafter he referred to as defendants. Special commissioners were duly appointed and hearing held which resulted in an award of $10,000.00. Both the state and the defendants duly and timely perfected appeals from the award. Trial was had to a jury in the County Court, which resulted in a verdict and judgment of $8,890.01 for the defendants, being $1,109.99 less than the award of the commissioners.

The state brought this condemnation proceeding to condemn 7.891 acres of land out of a 45.59 acre tract of land which the defendants had purchased November 13, 1959. The date of taking in this case is November 29, 1961.

Prior to institution of this proceeding, Interstate Highway 30 had been constructed. The whole property had frontage on a service road of Interstate 30 for 1,970 feet, and was bounded on the East by a farm to market road which dead-ended into the frontage road. The property at the time of the taking was located near but outside of the City Limits of Sulphur Springs.

Upon the 45.59 acre tract of land was situated a farm house, a dairy barn, and several out buildings. However, the portion under condemnation was entirely raw acreage. The property had no city utilities except electricity. It did have the use of a private three-fourth inch water line. These are substantially the physical facts and features of the property on the date of taking, November 29, 1961, and they are the same facts and features as of the date the defendants purchased the property, November 13, 1959, for a total sum of $15,000.00, or $329.-00 per acre for the 45.59 acres and all the improvements thereon.

The property at the date of purchase and the date of taking was being used as a rural homesite and for cattle grazing, a dairy farm and dairy show lot.

The 7.891 acres taken is an irregular shaped tract, which severed the subject

property, leaving a 7 plus acres remainder on the East side. The part taken had 542.6 feet of frontage on the frontage road.

There is no question raised as to the right of the state to take the property or as to the procedure followed. In fact, the parties entered into a stipulation by which it was agreed that the only questions to be resolved were the fair market value of the property taken and the damage, if any, to the remainder.

The defendants contend that the trial court erred in:

(1) Excluding from consideration by the jury evidence that the property in question was in the process of being developed as a shopping center;

(2) Refusing to allow Theron Moore to testify to steps that had been taken to develop the property as a shopping center;

(3) Excluding from the evidence a plat showing development of the property as a shopping center;

(4) Refusing to permit defendant, G. H. Melton, to testify that he purchased the property for the purpose of developing it;

(5) Refusing to permit defendant, G. H. Melton, to testify as to the plans and work that had been done in developing the property as a shopping center;

(6) Refusing to permit cross-examination of the state's witness, Froneberger, concerning her knowledge of the use being made by the defendants of the property as a shopping center.

Throughout the trial in the County Court, it was the position of the defendants that their property should be valued as commercial property rather than as farm or ranch land. It was the position of the state, on the other hand, that it had no value as commercial property.

The defendants in their brief say:

"While Defendants have here asserted 18 points of error, their position

can easily be summarized by stating that it is their earnest belief that, during the trial of this case, the trial court effectively prevented them from establishing the value of the property for use as a shopping center, and even kept the jury from considering it; while, at the same time, giving the State free rein to establish that the property was usable only for raising cattle or possibly as a residence. * * * "

Defendants' first witness, Theron O. Moore, testified that he was interested in the construction of a shopping center in or around Sulphur Springs, and he came to Sulphur Springs for the purpose of determining what lands were available. He made an extensive survey of the area and found that there were not too many desirable sites. He determined what, in his opinion, would be the best site for a shopping center, and that was the 45-acre tract owned by the defendants. Moore was also permitted to testify why he thought the property was feasible as a shopping center, and the type of study he had made. The witness Moore further testified that he contacted defendant, G. H. Melton, and they had discussions about development of a shopping center.

Defendant G. H. Melton testified that he purchased the property for the purpose of developing it and corroborated witness Moore's testimony as to what had already been done at the time of taking with reference to a shopping center. He testified that, in his opinion, the highest and best use for the property was commercial and, within that category, the best use would have been as a shopping center.

Defendants' next witness, David Lemmon, testified in his opinion the highest and best use of the property was commercial but that after the taking it would have no commercial use.

Defendants' witness Bailey testified that the highest and best use of the property was for commercial or residential development or both.

The state objected to witnesses Moore and Melton testifying as to proposed plans or intended uses of the land for a shopping center and the court excluded such testimony. Also, on cross-examination of Vira Froneberger, she was asked if she knew that there was a proposed shopping center on this property after Melton had purchased it. The state objected on the ground that this was going into a hypothetical proposed shopping center and the objection was sustained. The defendants contend that the trial court committed error in excluding such evidence.

■ We think the proffered testimony relating to plans and intended use of the property for a shopping center was wholly speculative. The defendants had done nothing toward altering the surface or subsurface of the property nor had any improvements been placed upon it pursuant to any such plans or intended uses. How the property might best be developed was not a matter for the jury's consideration. The trial court did not err in excluding it. Bruner v. State of Texas, 391 S.W.2d 149, (Tex.Civ.App.) 1965, n. w. h. at this time; Lower Nueces River Water Supply District v. Collins, 357 S.W.2d 449, (Tex.Civ.App.) 1962, writ refused, n. r. e. and authorities cited.

■ In any event, market value in such a case should be based upon a reasonable cash value and a reasonable use for reasonable adaptability, and not upon some speculative, contemplated use to be made of the land. Cravens v. City of Amarillo, 309 S.W.2d 903, (Tex.Civ.App.) 1958, writ dismissed and other authorities there cited. Also see: State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, 979 (S.Ct.); Texas Electric Service Company v. Campbell, 336 S.W.2d 742, (S.Ct.) 1960; Texas Power & Light Co. v. Hill, 27 S.W.2d 842, (Tex.Civ.App.) 1930, writ dismissed.

In regard to defendants' complaint of the court's action in excluding from the evidence a plat showing development of the

property as a shopping center, the record does not show that the defendants at any time offered the plat into evidence, nor in perfecting any Bill of Exception offered the plat. The excluded plat is not before this court. The record shows the following:

"Mr. McDaniel: While the jury is out, we can handle this now or we can handle it later. We understand that you are going to offer a plat showing a subdivision drawn of the land, is that correct?

"Mr. Bader: We don't know * * *."

■ Since the excluded evidence of which the defendants complain is not in the record or part of a Bill of Exceptions, or shown to have been offered in evidence at any time, thus there is nothing for the appellate court to review. American Guaranty Life, Health and Accident Insurance Company v. State of Texas, 332 S.W.2d 135, (Tex.Civ.App.) 1960, n. w. h.; Gulf Paving Co. v. Lofstedt, 144 Tex. 17, 188 S.W.2d 155, (S.Ct.) 1945; McCarthy v. City of Amarillo, 307 S.W.2d 595, (Tex. Civ.App.) 1957, n. w. h. Defendants' Points 1 through 6 are overruled.

The defendants by their Point of Error No. 8 complain that: "The trial court erred in refusing to instruct the jury, in its charge, that, in determining market value, the jury was entitled to consider all of the uses to which the property was reasonably adaptable, and for which it either was or would in all probability become available within the reasonable future."

■ The defendants objected to the court's charge and the court's refusal to give their requested definition of market value. The court gave the following charge:

"You are instructed that the term 'market value' is the price the property will bring when offered for sale by one who desires to sell, but is not obliged to sell, and is bought by one who

desires to buy, but is under no necessity of buying."

The defendants requested the following instruction:

"You are instructed that the term 'market value' is the price the property will bring when offered for sale by one who desires to sell, but is not obliged to sell, and is bought by one who desires to buy, but is under no necessity of buying, taking into consideration all of the uses of which it is reasonably adaptable and for which it either is or in all reasonable probability will become available within the reasonable future."

The definition given by the trial court is, in effect, the one approved by the Supreme Court in State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, 979 and was properly given here. South v. Texas Eastern Transmission Corporation, 332 S.W.2d 442, (Tex.Civ.App.) 1960, n. w. h.; Frost v. State of Texas, 284 S.W.2d 232, (Tex.Civ. App.) 1955, n. w. h.; Herndon v. Housing Authority of City of Dallas, 261 S.W.2d 221, (Tex.Civ.App.) 1953, n. w. h.; Eubank v. State, 330 S.W.2d 510, (Tex.Civ.App.) 1959, writ refused, n. r. e.

This court in the case of Jones v. City of Houston, 380 S.W.2d 761, n. w. h., in an opinion written by Justice Sellers said: "This charge is the approved charge of the Supreme Court in the case of State v. Carpenter et al., 126 Tex. 604, 89 S.W.2d [194] 979, and we find nothing in the record rendering this definition inapplicable to the facts in this case." The definition of "market value" in the Jones case was substantially the same as the definition given in the case at bar. In the instant case, we adhere to our holding in that case and this point is overruled.

■ Moreover, defendants' Point 8 should be overruled on the additional grounds that they have not properly preserved their complaint to this court. Upon examination of the transcript, we find that

the instrument designated "Defendants' Objections to the Court's Charge" contains the objection to the definition and the special requested definition. It is not signed by the trial judge, however, and contains nothing to show that this instrument was ever presented to the trial court or acted upon by him or other notations indicating that it was ever presented to the court or acted upon by him as provided by Rules 272 and 276, Texas Rules Civil Procedure. Gowan v. Reimers, 220 S.W.2d 331, (Tex. Civ.App.) 1949, writ refused, n. r. e.; Ramsey v. Polk County, 256 S.W.2d 425, (Tex. Civ.App.) 1953, n. w. h.

■ The defendants urge by Points 9 and 10 that the trial court erred in sustaining plaintiff's motion to suppress evidence of the sales of tracts of land of one acre or less and in refusing to allow the defendants to show sales of property which were one acre or less in size. The record, either by the Statement of Facts or by a Bill of Exception, does not contain the excluded evidence or show what it was, thus there is nothing for this court to review. American Guaranty Life, Health and Accident Insurance Company v. State of Texas, supra; McCarthy v. City of Amarillo, supra; Gulf Paving Company v. Lofstedt, supra.

■ However, we think the trial judge was entirely within his discretion in omitting evidence of sales of one acre or less. Morgan v. State of Texas, 343 S.W.2d 738, (Tex.Civ.App.) 1961, writ refused, n. r. e.; State v. Oakley, 163 Tex. 463, 346 S.W.2d 909, 95 A.L.R.2d 1207, 1962; Bruner v. State of Texas, supra; Holcombe v. City of Houston, 351 S.W.2d 69, (Tex.Civ.App.) 1961, n. w. h.; State v. Helvey, 375 S.W.2d 744, (Tex.Civ.App.) 1964, n. w. h.; Continental Development Corporation v. State, 337 S.W.2d 371, (Tex.Civ.App.) 1960, n. w. h.; Cravens v. City of Amarillo, supra; Reynolds v. State, 390 S.W.2d 493, (Tex.Civ.App.) 1965, n. w. h. at this time, and the defendants have shown no error or harm, since they have not brought the excluded evidence to this court.

Defendants next say that the trial court erred in excluding from the evidence testimony concerning sales of other land comprising the Spring Village Shopping Center and in holding that as a matter of law property acquired for Spring Village Shopping Center was not comparable to the property in question. The sales complained of were located North of Interstate 30 along the main street in the City of Sulphur Springs. The property had been subdivided for some time. It was in the City Limits and was within a highly developed area. There were streets, utilities and improvements involved. It was also shown that the property had been zoned commercial and second residential. We think the defendants' contentions here made are controlled by the holding of the Supreme Court in the case of State v. Wiley, 360 S.W.2d 524, 1962, wherein the court said: "It has long been held in this state that even though a tract of land is adaptable to subdivision for commercial and residential lots one seeking to prove the value of such a tract of land may not show what the price of the lots would be if subdivided, or show the price for which already subdivided lots were selling. * * *" Citing numerous authorities for such holding.

The court further held that "The admission of the testimony as to the sale price of lots in the subdivided areas undoubtedly prejudiced the State's case. * * *" The court went on to further hold that the admission of testimony as to sales in subdivided areas as being comparable to an undeveloped tract was reversible error and accordingly reversed and remanded the cause.

■ A discretion is lodged in the trial court relative to whether evidence tendered purporting to show sales of comparable

property to that condemned shall or shall not be admitted. Bruner v. State, supra, and authorities therein cited.

■ The defendants contend that State v. Helvey, supra, supports their contention. With this we do not agree. The facts in the Helvey case are distinguishable from the facts in the instant case. Defendants' Points 11 and 12 are overruled.

■ The defendants further contend that the answers to the Special Issues are against the great weight and preponderance of the evidence and that the damages awarded are grossly inadequate. This contention is overruled.

The state placed the testimony of five value witnesses before the jury, which ranged from $329.00 to $650.00 per acre for the part taken with no decrease in value to the remainder, or a total of from $2,600.00 to $5,200.00.

The defendants placed the testimony of four value witnesses before the jury, which ranged from $4,000.00 to $6,000.00 per acre for the part taken, and decrease in the value of the remainder from $14,-990.00 to $47,500.00 or a total of from $46,550.00 to $95,500.00.

The jury found the value of the 7.891 acres of land taken to be $5,129.11 and $3,760.90 for damages to the remainder, totaling $8,890.01. After careful review of all of the evidence, we find it is ample to support such award, and the same is not against the great weight and preponderance of the evidence. In re: King's Estate, 244 S.W.2d 660.

Defendants' remaining Points have been considered and are overruled.

Finding no reversible error in the record, the trial court's judgment is affirmed.

SELLERS, J., not participating.