**SOUTHWESTERN ELECTRIC POWER COMPANY, Appellant,**

v.

**Adelle PRESSWOOD et al., Appellees.**

**No. 290.**

Court of Civil Appeals of Texas.

Tyler.

Oct. 19, 1967.

Rehearing Denied Nov. 9, 1967.

Woodrow Edwards, Mt. Vernon, Joe W. Lovelace, Linden, Enoch Fletcher, Grand Saline, for appellant.

Elliott & Elliott, Clyde Elliott, Jr., Canton, Wynne & Wynne, Gordon Wynne, Sr., Wills Point, for appellees.

DUNAGAN, Chief Justice.

This is an eminent domain proceeding instituted in Van Zandt County, Texas, by Southwestern Electric Power Company, appellant, against Adelle Presswood, Esther Hopkins, and the First National Bank of Grand Saline, appellees. The bank is a party to this suit by reason of a Deed of Trust it holds against the property which is the subject matter of this suit. The take was a 100-foot wide surface easement over 40 acres of land belonging to Mrs. Presswood and Mrs. Hopkins, the part severed amounting to 2.77 acres. In a trial before a jury in the County Court of Van Zandt County, based upon a jury verdict, judgment was entered for appellees in the sum of $1,939.00 for the severed portion and $11,169.00 as damages to the remainder.

From that judgment, appellant has duly perfected its appeal. The parties, in the trial court, stipulated that the only issue involved was one of damages.

The record shows that this property is a part of Waldrip's subdivision to the City of Grand Saline. The record further shows:

(1) That to the west and in the same addition, Gene Germany has a house in the $50,000.00 class;

(2) That the property here involved is bound on the south by Football Field Road, which is the north boundary line of the City Limits to Grand Saline;

(3) That in the same addition is located the Grand Saline Grammar School;

(4) That the Grand Saline Independent School District has acquired additional property in the same addition for a new high school adjacent to the subject property;

(5) That such school in the open market paid $500.00 per acre for the new high school site;

(6) That across the street (Football Field Road) property sold to Matthews and others for almost $500.00 per acre;

(7) That less than a mile north of the property condemned, Earl Persons owns a home in the $150,000.00 class;

(8) That to the northeast Dr. Marsh has constructed a home in the $25,000.00 to $30,000.00 class and Dr. Hardt at the time of trial was building an even bigger home;

(9) That East down Football Field Road from the subject property is the most exclusive addition to Grand Saline;

(10) That South of and adjoining the subject property, along Football Field Road, Matthews has built a nice home;

(11) That in addition to the foregoing, the condemned property had the following utilities: Phone service, natural gas, elec-

tricity, and water furnished by a deep well; and

(12) That the condemned property has a paved street along its South Boundary Line and a paved country road along its North Boundary Line.

Immediately prior to condemnation, the foregoing portrays the neighborhood surrounding Appellees' property. Appellees Presswood and Hopkins approximately two years prior to condemnation proceedings, had built a home in the $17,000.00 class upon the subject property. The evidence shows that the subject property is located in a nice neighborhood with utilities and available to schools.

The testimony of the witnesses and the jury's findings as to the value of the 2.77 acres and the 37.23 acres (the remainder) before and after taking, are shown by the following chart:

| WITNESS | PART TAKEN | | REMAINDER | |
|---|---|---|---|---|
| | 2.77 acres Before (1) Per Acre | 2.77 acres After (2) Per Acre | 37.23 acres Before (3) Per Acre | 37.23 acres After (4) Per Acre |
| Robinson | $1,125.00 | $ 75.00 | $1,125.00 | $ 794.00 |
| Stasey | $1,325.00 | $ 100.00 | $1,325.00 | $ 748.37 |
| Hubbard | $ 300.00 | $ 150.00 | $ 300.00 | $ 300.00 |
| Estes | $ 380.00 | $ 190.00 | $ 380.00 | $ 380.00 |
| Winn | $ 700.00 | $ 350.00 | $ 810.00 | $ 810.00 |
| Mills | $1,050.00 | $ 200.00 | $1,050.00 | $ 612.25 |
| JURY VERDICT | $1,000.00 | $ 300.00 | $1,000.00 | $ 700.00 |

Appellant has predicated its appeal on three points of error. It asserts in its first point that "The trial court erred in allowing testimony, over plaintiff's proper objections, concerning adaptability of defendants' land for a residential subdivision and in entering judgment based on such testimony when there was no evidence that defendants intended their land for such future use or that anything had been done toward developing and improving it for such use." The Appellant says this court has already decided this point in its favor in the case of Melton v. State, 395 S.W.2d 426 (Tex. Civ.App., Tyler, 1965, writ ref., n. r. e.). We do not consider the *Melton* case in point under the facts reflected by the record in the instant case. In the *Melton* case under the facts presented therein, we held that the intended future use of land for a subdivision shopping center *specifically* was properly excluded in evidence, although its adaptability and suitability for that purpose might be shown generally. Moreover, testimony was admitted in the *Melton* case that the property was feasible as a shopping center and was the best site for such center in the Sulphur Springs area.

All of Appellees' witnesses and one of the witnesses (Winn) for the Appellant used a simple method of arriving at the market value of this property. Each of them arrived at the value of the land and then added the value of the improvements to reach the overall value. Two of the Appellant's witnesses, Hubbard and Estes, did not take into consideration the value of the improvements in appraising this property.

█ While the witnesses for Appellees gave the opinion that the highest and best use of the property in question was subdivision or small estates, their evaluation of the land was in line with recent sales of property adjoining appellees' land. Appellees are entitled to have the value of their land considered in the light of what adjacent land is bringing in the market, regardless of past, present or future use. Hays v. State, 342 S.W.2d 167 (Tex.Civ. App., Dallas, 1960, writ ref., n. r. e.). See also City of Tyler v. Ginn, 225 S.W.2d 997 (Tex.Civ.App., Texarkana, 1949, writ of err. dism., 148 Tex. 604, 227 S.W.2d 1022); Kennedy v. Travis County, 61 Tex.Civ.App. 547, 130 S.W. 844 (1910, n. w. h.).

Section 123, Texas Law of Condemnation by Rayburn discusses "adaptability for All Existing and Reasonably Forseeable Uses" which may be shown in evidence to determine market value. This article states that it is settled law in Texas that the setting and surrounding of such property can be shown in evidence to enable the court and jury to determine the ultimate issues of market value of the real estate taken and the damages to the remainder. Many cases are cited for this proposition.

█ In Continental Pipe Line Co. v. Kiel, 227 S.W.2d 825, 828 (Tex.Civ.App., Fort Worth, n. w. h.), it was held:

"* * * The test seems to be that the owner may show uses his land was suitable for or adaptable to affecting its value under the facts and circumstances existing at the time condemnor's acts

occurred. This is true whether the owner has chosen to avail himself of the situation or not. If the value existed it belonged to him and the condemnor could not take it from him without just compensation."

The Supreme Court, in State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, stated that:

"Generally, it may be said that it is proper as touching the matter of the value and depreciation in value to admit evidence upon all such matters as suitability and adaptability, surroundings, conditions before and after, and all circumstances which tend to increase or diminish the present market value. * * *"

In City of Tyler v. Ginn, 225 S.W.2d 997, 998, writ dismissed 148 Tex. 604, 227 S.W. 2d 1022, it was held:

"* * * There seems to be no question but that appellees are entitled to the highest value for which the property was adaptable. * * *"

It is a general rule that the value of land condemned is not to be estimated simply with reference to the condition in which the owner has maintained it or for the use to which it is at the time applied, but with reference to any use to which it can be reasonably adapted. 29A C.J.S. Eminent Domain § 160, page 675; Calvert v. City of Denton, 375 S.W.2d 522 (Tex.Civ.App., Fort Worth, 1964, writ ref., n. r. e.).

By its Points Two and Three, Appellant contends (1) that the judgment of the trial court is contrary to the overwhelming preponderance of the credible evidence adduced on the trial; and (2) that the verdict and judgment is so excessive and clearly unjust that Appellant should be awarded a new trial or a remittitur should be required if the judgment is affirmed.

█ The jury's findings to the special issues submitted (all being damage issues) were within the range of the testimony as to the value of the 2.77 acres before and after the taking and the 37.23 acres, the

remainder, before and after the taking, as is reflected by the above chart of the value testimony. In Maddox v. Gulf, Colorado & Santa Fe Ry. Co., 293 S.W.2d 499 (Tex. Civ.App., Fort Worth, 1956, writ ref., n. r. e.), it is held that in a condemnation case, the jury when considering the value of condemnee's remaining property immediately after condemnation, is restricted only by the lowest figure testified to.

The Court, in McConnico v. Texas Power & Light Co., 335 S.W.2d 397 (Tex.Civ.App., Beaumont, 1960, writ ref., n. r. e.), said:

"* * * A jury is at liberty to reach its conclusion by blending all of the evidence admitted before them, aided by their own experience and knowledge of the subject of inquiry. They are not compelled to credit all the testimony of any witness or to reject it all. * * *"

After a careful review of all of the evidence, we find that none of the answers made by the jury are so contrary to the weight and preponderance of the evidence as to be clearly wrong or excessive.

The basis of Appellees' remaining points of error is that the trial court erred in admitting evidence concerning the ten acre tract adjoining the thirty acre tract because the thirty acre tract was jointly owned by Appellees, Adelle Presswood and Esther Hopkins, and the ten acre tract was owned only by Adelle Presswood; that the proof of unity of ownership of the entire forty acres in question is insufficient to support the judgment awarding damages to remainder of the entire forty acres not condemned, which includes the ten acre tract. The record shows that the two tracts of land are contiguous. The easement sought to be condemned was across the lower edge of the thirty acre tract, separating it from the ten acre tract.

The thirty acre tract was purchased in 1956 in the name of both Appellees, Adelle Presswood and Esther Hopkins. The ten acre tract was purchased in 1942 in the name of Adelle Presswood only. Upon the trial of this case, on direct examination, Adelle Presswood testified:

"Q Now, Miss Presswood, there has been some discussion about your property over there. You own how much land, you and Miss Esther own over there?

"A 40 acres.

"Q That 40 acres is in two tracts, is it?

"A Right.

"Q Now, the 30 acre tract, when did you buy that?

"A 1956.

"Q When did you buy the ten acre tract?

"A I believe in 1942.

"Q All right. Now, is that operated as one unit?

"A Yes, right.

"Q Any street between the two tracts?

"A No.

"Q All right. Is it a common ownership between the two of you?

"A It is.

"* * *

"Q How about the barn, did you all build the barn together?

"A In 1956 we secured a loan on that at that time in both of our names.

"Q Both of you signed the mortgage on it. When you built your house— when did you build the house?

"A It was completed in April, 1963."

It seems to be undisputed that the barn is located upon the ten acre tract.

On cross-examination, Adelle Presswood gave the following testimony:

"Q Does your deed to the ten acres have the Miss Hopkins name on it

but since 1946 it has been held in trust for her. In other words, she doesn't have any record ownership of it?

"A  There is nothing on record. There has been a provision made in a will. We can change it anytime we want to and I will make this explanation.

"Q  You rendered it for taxation though as your separate property, the ten acre tract?

"A  I sure do.

"Q  The deed does stand in your name?

"A  That's right, it has never changed."

Upon cross-examination, Appellant's witness, T. N. Winn, gave the following testimony:

"Q  And you know where that ten acres comes down there where the barn is, don't you?

"A  Yes, sir.

"Q  That is all used as one unit there, isn't it?

"A  Yes, sir, I would say it is.

"Q  The whole thing.

"A  I would say it was.

"*  *  *

"Q  I don't want you to read it. I want you to tell me whether you took the ten acres in consideration or not?

"A  I knew it was there. I knew it was used as a unit.

"Q  You knew it was used as a unit.

"A  I recorded in my record that the barn for the cattle operation was located on this ten acres.

"Q  And it was used as a unit together with the other property?

"A  Not denying it at all. I am agreeing with you, sir.

"*  *  *"

■ The fact that Adelle Presswood rendered the ten acre tract for taxes in her name only and paid the taxes thereon does not conclusively and as a matter of law establish ownership to the tract of land.

Appellant relies heavily on the recent decision in Gossett v. State of Texas, 417 S.W.2d 730 (Tex.Civ.App., Eastland, 1967), as supporting its contention that there is no competent evidence in the instant case to establish a unit of ownership between the two parcels of land herein involved. We do not deem the *Gossett* case as controlling of the case before us. The court, in the *Gossett* case, held that the evidence did not show a unit of ownership between the tracts involved as is required in such cases. The case at bar presents a different fact situation. Here, the undisputed testimony, admitted without objection, does clearly establish a unity of use and ownership of the two tracts of land in question, as is required in such cases.

In the case at bar, there was evidence offered by Appellees as to the type of neighborhood surrounding the property involved, its adaptability, comparable sales and its highest and best use. From these, the jury could arrive at the market value thereof.

Consideration of Appellant's points has required us to examine the entire record. Having done so and having considered all of the evidence, that supporting as well as that contrary to the verdict and judgment, it is our opinion that all of Appellant's points are without merit. They are accordingly overruled.

The judgment is affirmed.