State v. Dana et al 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-94-062-CV

     THE STATE OF TEXAS,
                                                                                              Appellant
     v.

     JOE J. DANA, ET UX., ET AL.,
                                                                                              Appellees
 

From the County Court
Ellis County, Texas
Trial Court # C-2790
                                                                                                    

O P I N I O N
                                                                                                    

      This is a condemnation case involving 67.879 acres in Ellis County. The State appeals on
four points, asserting that the court erred in admitting evidence of certain "comparable" sales and
of a hypothetical subdivision. We will affirm the judgment.
      Joe Dana testified that he purchased the property in 1971 and since that time the land has been
used for agricultural purposes. Bryan Scott, an appraiser hired by Dana, testified that the highest
and best use for the property would be to "cut it up in small rural acreage" and "just plat it." 
Based on his analysis of the property and of comparable sales, Scott testified that the fair market
value of the property is $3,500 per acre. Troy Alley, the State's appraiser, testified that the
property's highest and best use is for agricultural purposes. Based on his analysis of the property
and comparable sales, Alley testified that the fair market value of the property is $1,750 per acre. 
The jury found the fair market value of the land to be $3,500 per acre. 
      In points one and two, the State complains that the court abused its discretion in admitting
evidence and opinion testimony based on sales of subdivided tracts as comparable sales to estimate
the value of Dana's property, which is an "undeveloped large acreage tract."  
      The decision whether to admit evidence is a matter within the discretion of the court. 
Champlin Oil & Refining Co. v. Chastain, 403 S.W.2d 376, 389 (Tex. 1965). The court's
determination will not be overturned absent an abuse of discretion. Steenbergen v. Ford Motor
Co., 814 S.W.2d 755, 760 (Tex. App.—Dallas 1991, writ denied), cert. denied, ——— U.S.
———, 113 S.Ct 97, 121 L.Ed.2d 58 (1992). 
       Scott testified that the highest and best use of the property would be to divide it into smaller
rural-acreage lots. He testified that many factors led to his opinion that the property could be
successfully divided. First, the property has a lengthy frontage road which precludes the need to
build streets for access to smaller tracts. Second, it has access to electrical and gas lines. Thus,
a potential buyer who wished to purchase the property to develop it into smaller tracts would not
have the expense of building roads and installing utilities to service the tracts. Third, the property
lies in the Waxahachie Independent School District (WISD). Finally, the Ellis County subdivision
ordinances make the development of the property into smaller residential tracts "very much
desirable." Scott testified that, in determining that the highest and best use of Dana's property was
to subdivide it, he looked to see whether subdividing it was legally, physically, and economically
feasible. He determined that it was.
      Scott testified that, in his opinion, the property was worth $3,500 an acre. He based his
opinion on two comparable sales. The first sale was from A.C. Browning to four individuals


 and
involved 53 acres being used for agricultural purposes. Scott believed the property to be
comparable to Dana's property because it too had utilities available, was in the WISD, and had
good frontage road. Scott testified that the Browning property sold for $3,500 an acre. The
second sale was from Hart Farm Ventures to Gentry Smith. The sale involved a vacant lot in a
platted subdivision of five- to fifteen-acre tracts. Scott testified that the Hart property had
comparable utility and road access and that it had sold for $4,100 per acre on March 5, 1991.
      During its cross-examination of Scott, the State sought to prove that gas and telephone
easements which bisect Dana's property make subdivision impractical. The State introduced a plat
of Dana's property showing utility easements across the property and sought to establish that these
were legal and physical impediments which Scott had not considered when forming his opinion
that subdividing the property was its highest and best use. Scott agreed that houses could not be
built over the utility easements. The State objected, however, when Scott attempted to qualify his
answer by saying that houses could easily be situated to avoid the easements. The State also
sought to establish that Scott had failed to consider the cost of connecting utilities, the weight
limits of nearby bridges, and the cost of "rollback" taxes in determining his opinion of the
property's value. Scott stated that his value of $3,500 per acre was not a "development price." 
Finally, the State sought to establish that there was not a demand for subdivided lots in the area.
      On Scott's redirect, Dana attempted to prove that, despite the questions raised by the State,
the highest and best use of the property was to divide it into five- to fifteen-acre tracts and that the
property was worth $3,500 per acre. He introduced a plat of the property and asked Scott to
"show the jury how you can come in here and plat the land off and where people can build a home
on it and taking into consideration the telephone and also the gas easement." The State objected
that "it would be improper to value this property as if it were cut up into small acre tracts. . . [I]t's
an idea that's improper with regard to the whole acre tract because it hasn't been subdivided." 
The court overruled the objection. Scott then drew subdivision lines on the plat to show that the
property could be divided into seven tracts of nine to ten acres each and that homes could be
located on the tracts despite the utility easements. 
      In deciding the fair market value of property in a condemnation case, the jury is permitted to
consider all of the uses to which the property is reasonably adaptable and for which it is, or in all
reasonable probability will become, available within the foreseeable future. State v. Windham,
837 S.W.2d 73, 77 (Tex. 1992); McAshan v. Delhi Gas Pipeline Corp., 739 S.W.2d 130, 131
(Tex. App.—San Antonio 1987, no writ). Thus, evidence of whether the property is reasonably
adaptable for subdivision is admissible. Southwestern Electric Power Co. v. Presswood, 420
S.W.2d 182, 185 (Tex. Civ. App.—Tyler 1967, no writ); Continental Pipe Line Co. v. Kiel, 227
S.W.2d 825, 828 (Tex. Civ. App.—Fort Worth 1950, no writ).
      The State cites Tenngasco Gas Gathering Co. v. Fischer, 624 S.W.2d 301, 303 (Tex.
App.—Corpus Christi 1981, writ ref'd n.r.e.), and State v. Willey, 360 S.W.2d 524, 525 (Tex.
1962), for the proposition that, in valuing raw acreage, prices for subdivided lots are inadmissible. 
"It has long been held in this State that even though a tract of land is adaptable to subdivision . .
. one seeking to prove the value of such a tract of land may not show what the price of the lots
would be as subdivided, or show the price for which already subdivided lots were selling." 
Willey, 360 S.W.2d at 525. Thus, the State argues, the court erred in admitting evidence of the
Browning and Hart Farm sales and in allowing Scott's opinion testimony of the sales. 
      Scott testified that the 53 acre Browning tract was being used for agricultural purposes when
it was sold to the four buyers for $3,500 per acre. Although three of the four buyers eventually
built homes on the individual lots, it is unclear whether the property was "subdivided." Scott
testified that the buyers imposed restrictions on the property. Scott testified that his estimate of
$3,500 per acre was the value of Dana's property as "development property," not its value if it
were "subdivided, cut off and sold off into small pieces." 
      The evidence of the Browning sale and Scott's opinion testimony do not appear to be
precluded by the rule that prices paid for subdivision lots are inadmissible in valuing raw acreage
because it is not clear that the Browning property was "subdivided." See id. From the record,
we cannot determine that the Browning property, although used by three of four buyers to build
homes, was "subdivided" or platted. 
      The Hart Farm sale, however, appears to be the sale of an individual small tract within a
platted subdivision. Assuming, without deciding, that the court should not have admitted the
evidence or opinion testimony related to the second comparable sale,


 we cannot determine that
the State was harmed. Scott testified that the Hart property sold for $4,100 per acre. The jury
valued the Dana property at $3,500 per acre, the amount for which the Browning property had
sold. Clearly, the jury rejected the higher sale price of the subdivided Hart Farm sale. 
      We overrule points one and two.
      In points three and four, the State complains that the court erred in admitting evidence and
opinion testimony regarding a hypothetical subdivision of the property. Generally, when property
being condemned is raw acreage, it is improper to admit evidence of hypothetical plats of
nonexistent subdivisions. Lower Nueces River Water Supply Dist. v. Collins, 357 S.W.2d 449,
452 (Tex. Civ. App.—San Antonio 1962, writ ref'd n.r.e.). The reasoning behind this rule is that
hypothetical plats "tend to cause the jury to value the land as lots." Id. The jury is only to
determine the value of the tract of land—not how the land can best be divided, or how the lots
could best be sold, or the price per lot. Id. In Collins, the trial court allowed the landowner's
appraiser to hypothetically divide the subject property into 367 lots, marking 209 lots as
"lakefront," and devising a color scheme as to the desirability of the various lots. Id. at 451. In
reversing, the appellate court acknowledged that "the normal reaction of the jury was to see how
much profit the owners could make, over and above expenses, by selling the lots at retail." Id.
at 452.
      Although hypothetical plats are generally inadmissible as to raw acreage, the plats may be
admissible when they are relevant to prove some issue in the case and are limited to that purpose. 
Delhi Gas Pipeline Corp. v. Richards, 659 S.W.2d 861, 864 (Tex. App.—Tyler 1983, no writ),
overruled on other grounds, Callejo v. Brazos Elec. Power Co., 755 S.W.2d 73, 75 (Tex. 1988). 
Through its cross-examination of Scott, the State sought to prove that Dana's property was not
amenable to subdivision because of gas line and telephone cable easements. On redirect
examination, Dana sought to establish that the property was amenable to subdivision despite the
utility easements. Over objection, the court allowed Scott to draw lines on the plat showing seven
tracts.
      The "highest and best use" of Dana's property was hotly contested. Dana sought to prove that
the property was adaptable for subdivision; the State sought to prove that subdivision was
impractical and not feasible and that the property was best suited for agricultural purposes. The
court could have determined, within its discretion, that the hypothetical lines drawn by Scott were
admissible for the purpose of showing that subdivision was possible. See id.
      Furthermore, Scott's testimony related to the value of Dana's property on a per-acre basis. 
The hypothetical plat did not, as in Collins, leave the jury to conjecture on the profit to be made
on hundreds of hypothetical, subdivided lots. See Collins, 357 S.W.2d at 452. We overrule
points three and four. 
      We affirm the judgment.
 
                                                                                 BILL VANCE
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed August 31, 1995
Do not publish