

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

Nos.   07-13-00427-CV
        07-13-00428-CV

ONCOR ELECTRIC DELIVERY COMPANY, LLC, APPELLANT

V.

WILLIAM E. BROWN AND HELEN W. BROWN
AS TRUSTEES OF THE WILLIAM E. BROWN AND
HELEN W. BROWN REVOCABLE LIVING TRUST, APPELLEES

On Appeal from the 46th District Court
Wilbarger County, Texas
Trial Court No. 26,011, 26,012, Honorable Dan Mike Bird, Presiding

November 6, 2014

## OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Oncor Electric Delivery Company, LLC, (Oncor) appeals the judgment entered by the trial court in a condemnation proceeding against William E. Brown and Helen W. Brown as Trustees of the William E. Brown and Helen W. Brown Revocable Living Trust (Brown Trust).  We will reverse in part and remand as to that portion we have reversed and affirm all other aspects of the judgment.

Factual and Procedural Background

Oncor sought an easement across three tracts of land belonging to the Brown Trust in order to build an electrical transmission line. The tracts are variously identified as: 1) an easement for 7.979 acres out of a 159 acre tract, identified by Oncor as CCN313, also known as the "Dunges Place"; 2) an easement for 18.139 acres out of a 407 acre tract, identified by Oncor as CCN306, also known as "Helen's Place"; and 3) an easement for 7.986 acres out of a 77.986 acre tract, identified by Oncor as CCN304.1, also known as the "King Place." After negotiations to secure the easement failed, Oncor filed its petition for statutory condemnation and requested that special commissioners be appointed to assess damages to the property of the Brown Trust. Oncor filed its objections to the award of the special commissioners. The Brown Trust subsequently made an appearance in the judicial proceeding.

After the Brown Trust made an appearance in the judicial proceeding, William E. Brown died on October 12, 2012, and Helen W. Brown died on May 2, 2013.[1] Following the deaths of William E. Brown and Helen W. Brown, William A. Brown (Allen) became the first successor trustee of the William E. Brown and Helen W. Brown Revocable Living Trust.

Initially, Oncor had filed two separate judicial actions regarding the condemnation proceedings on the three tracts of land. Trial court cause No. 26,011 involved tracts CCN306 (Helen's Place), and CCN313 (Dunges Place). Trial court cause No. 26,012 involved tract CCN304.1 (King Place). The two cause numbers were consolidated for

---

[1] Both deaths were after the agreed date of take, November 4, 2011, as reflected in the Agreed Order Granting Condemnor's Motion For Partial Summary Judgment.

trial. The trial court later entered an agreed order granting a partial summary judgment. The effect of the trial court's agreed order was to limit the jury questions to: 1) the amount of compensation due for the property taken, and 2) damages, if any, to the remainder of the property not taken.

The record reflects that, in reference to tract CCN313 (Dunges Place), the primary issue was whether a one acre tract that had been previously taken from the north side of a 160 acre tract and deeded to Allen would be considered with the 159 acre tract for purposes of assessing damages to the remainder property. The one acre tract consisted mainly of Allen's home and the barns and storage areas for his farm equipment. Testimony showed that this was the equipment with which he farmed the farm land belonging to the Brown Trust. Oncor's petition in condemnation asked to condemn 7.979 acres out of the 159 acre tract. The Brown Trust contended that the one acre tract must also be considered in determining the damage to the remainder tract. After a pre-trial hearing on the issue of unity of ownership, the trial court ruled that there was unity of ownership between the 159 acre tract and the one acre tract. As a result of this ruling, the appraiser for the Brown Trust, Jim Henderson, testified about damages to the remainder of the 160 acre tract and the jury charge questions, regarding the Dunges Place, were couched in terms of damage to the remainder of the 160 acre tract, in addition to the value of the 7.979 acre tract.

Oncor's position throughout the proceedings was that there was no unity of ownership between the 159 acre tract and the one acre tract. Accordingly, any remainder damages that included the one acre tract were flawed and did not represent the true value of damages to the remainder. Additionally, Oncor objected to

3

Henderson's testimony because it contained a flaw in its factual underpinnings, that the one acre tract should be included in the consideration of the damages to the remainder.

At the conclusion of the testimony, the trial court submitted its charge to the jury. A review of the first jury instruction reflects that the trial court instructed the jury that the "third is Tract CCN no. 313, being 160 acres known as 'Dunges Place', and Oncor is taking 7.979 acres of permanent easement." There were six questions asked of the jury. Four of these questions dealt with tracts 304.1, "King Place" and 306, "Helen's Place." Jury questions No. 5 and No. 6 dealt with the "Dunges Place."

Jury Question No. 5 asked:

> With respect to Tract CCN 313, being 160 acres known as "Dunges' Place" from a preponderance of the evidence, what do you find as the fair market value of the Part Taken, being 7.979 acres, as of the date of taking, November 4, 2011?

The jury answered $14,363.00.

Jury Question No. 6 asked:

> With respect to Tract CCN No. 313, being 160 acres known as "Dunges' Place" from a preponderance of the evidence, what do you find to be the damages, if any, to the Remainder Property, being 152.021 acres, as a result of the acquisition of the Permanent Easment and Right-of-way as of the date of taking, November 4, 2011?

The question then contained an instruction to the jury for use in determining the damage to the remainder property as follows:

> In answering Question No. 6, you are instructed that you shall determine the damages, if any, to the Remainder Property, including improvements thereon, as a result of the acquisition of the 7.979 acres of land as of the date of taking by considering the differences between: (a) the fair market value of the Remainder Property immediately before the taking; and (b) the fair market value of the Remainder Property immediately after the

4

taking, giving consideration to how the property is presently being used or may be used in the foreseeable future.

The jury answered $105,000.00.

Based upon the jury's answer to the questions submitted to them, the trial court entered a judgment awarding a 160 foot permanent easement and right-of-way in favor of Oncor for the construction of an electrical transmission line. The judgment ordered Oncor to pay the sum of $219,263.50 to secure the aforementioned easement and for damages to the remainder property. Further, because the jury awarded greater damages than the Special Commissioners awarded, and pursuant to Section 21.047(a) of the Texas Property Code, Oncor was ordered to pay all taxable costs.

Oncor filed a motion to set aside the final judgment and decree of condemnation, for remittitur, or, in the alternative, for new trial. Additionally, by separate document, Oncor filed a motion to set aside final judgment and decree of condemnation, disregard jury answers No. 5 and 6, and for judgment. Based upon the record before us, these motions appear to have been overruled by operation of law. Thereafter, Oncor gave notice of appeal.

Oncor's contentions on appeal center around two aspects of the trial. First, Oncor contends that the trial court erred in finding unity of ownership between the 159 acre tract and the one acre tract. Oncor states that, as a result of this error by the trial court, erroneous damages were awarded the Brown Trust and, as a result of this trial court error, Henderson was allowed to base his opinion about the decrease in value of the remainder property on an erroneous inclusion of the one acre tract. Second, Oncor contends that Allen should not have been allowed to testify about the value of the

5

property or the damage to the remainder property because he was not properly designated. For reasons hereinafter explained, we will reverse the judgment of the trial court as it applies to tract CCN 313, the "Dunges Place," and remand for a new trial on that aspect of the condemnation proceeding.

## Unity of Ownership

As pertinent to this appeal, the primary issue for this Court to focus on is the question of whether unity of ownership between the original 159 acre condemned property and the one acre portion, as found by the trial court, has been demonstrated in the record. We focus on this issue because it has a direct bearing on the assessment of damages to the remainder property found in answer to jury question No. 6.

### Standard of Review and Applicable Law

The trial court conducted one pre-trial hearing on this issue and ruled that the two tracts did possess unity of ownership. Subsequently, before the jury heard the evidence, the trial court again ruled that, as a matter of law, the two tracts had unity of ownership and thus must be considered together to determine damages. We review the trial court's determination of a question of law *de novo.* *See El Paso Natural Gas Co. v. Minco Oil & Gas Inc.,* 8 S.W.3d 309, 312 (Tex. 1999).

We begin by discussing the law regarding the valuation of property subject to a condemnation proceeding. Compensation for land taken by eminent domain is measured by the fair market value of the land at the time of taking. *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 627 (Tex. 2002). When only a part of the land is taken for an easement, as is the case here, a partial taking occurs. *See Westgate, Ltd. v. State,* 843

6

S.W.2d 448, 456 (Tex. 1992). In such a situation, the rule of looking at the value of the land before-and-after the taking applies. *Id.* Where there has been a partial taking, the court first looks to the value of the land at the time it was taken. *See Exxon Pipeline Co.,* 88 S.W.3d at 627. Then, the court must determine the diminution in value to the remainder of the land. *See id.*

The basis for an award of damages to a remainder tract is that there is unity of use and unity of ownership with that tract and the part actually taken. *City of Austin v. Capitol Livestock Auction Co.,* 453 S.W.2d 461, 463 (Tex. 1970). As stated in *Gossett v. State*, 417 S.W.2d 730, 734 (Tex. Civ. App.—Eastland 1967, writ ref'd n.r.e.), "It is, of course, essential to constitute a single parcel that it be owned in its entirety by one owner or one set of owners."

Analysis

On the date of take, November 4, 2011, the 159 acre tract, the original number of acres sought to be condemned for purposes of the utility easement, was owned by the Brown Trust. On the date of take, William E. Brown and Helen W. Brown were still alive. On the date of take, Allen and his sister, Kristie, were contingent beneficiaries of the Brown Trust. Further, the record reflects that, on the day of take, Allen owned the one acre tract, having acquired the one acre by deed delivered by William E. Brown and Helen W. Brown in 1989. In 1990, Allen and his wife, Yvonne, built a home on the one acre tract. Even if we ignore any interest that Yvonne might or might not have in the one acre tract, we still have a fact pattern that demonstrates a lack of unity of ownership between the 159 acre tract and the one acre tract. Specifically, on the day of take,

7

William E. Brown, Helen W. Brown, Allen, and Kristie all had an interest of some degree in the 159 acre tract. Yet, only Allen had a legal interest in the one acre tract. As such, we find there is no unity of ownership. *See id.* Because there is no unity of ownership, the very basis for awarding damages to a remainder tract that includes the one acre tract is missing. *Capitol Livestock Auction Co.,* 453 S.W.2d at 463.

The Brown Trust contends that we should not follow the *Gosset* case because it is too old and does not properly reflect the current state of the law.[2] Instead, the Brown Trust ask us to follow *Sw. Elec. Power Co. v. Presswood*, 420 S.W.2d 182, 185-87 (Tex. Civ. App.—Tyler 1967, no writ). However, we find that reliance on *Presswood* is misplaced. In *Presswood,* the facts revealed that there was unity of ownership, although not in the sense of legal title. The trial court found and the appellate court agreed that Presswood and Hopkins had unity of use and ownership, albeit not in sense of the legal title to the second adjacent parcel. *See id.* Essentially, the Tyler court simply refused to apply the ruling of the *Gossett* court.

We have chosen to follow the teachings of *Gossett* because: 1) the Texas Supreme Court refused to grant writ of error, finding there was no reversible error, and 2) the Texas Supreme Court previously held that, for there to be damages attributable to a remainder, there must be unity of use and unity of ownership between the part taken and the part designated as the remainder. *Capitol Livestock Auction Co.,* 453 S.W.2d at 463. Finally, we note that the Texas Supreme Court has not opted to revisit this area of the law.

---

[2] We point out that the *Gossett* case was published the same year as the case that the Brown Trust asks us to follow, *Presswood.*

The Brown Trust further urges the Court to follow the lead of the United States District Court for the Southern District of Texas, Laredo Division, as set forth in *United States v. 14.36 Acres of Land in McMullen County, Texas,* 252 F. Supp. 2d 361, 363 (S.D. Tex. 2002).  However, in discussing the law applicable to its case, the court in the *14.36 Acres of Land* case makes it clear that it is not following *Gossett* because "federal substantive law, not state law, controls in a federal condemnation case." *Id.*

Inasmuch as the record reflects that the Brown Trust appraiser testified that he included his calculations of damages to the one acre tract in his calculation of damages to the remainder, we have no choice but to reverse the judgment of the trial court as to jury questions No. 5 and 6.  The entire question of valuation of the 159 acres must be reconsidered without considering the one acre tract.  Accordingly, we sustain Oncor's issues regarding the trial court's determination of unity of ownership, and the trial court's overruling of Oncor's motion to exclude the testimony of the Brown Trust's appraiser, based upon his erroneous assumption of a 160 acre tract.

We do not reach Oncor's final issue regarding Allen's testimony because its analysis is not necessary for the purpose of our disposition of this matter.  *See* TEX. R. APP. P. 47.1

Conclusion

Having sustained two of Oncor's issues regarding the jury's answers to jury questions No. 5 and 6, we reverse and remand those issues back to the trial court for a

new trial consistent with this opinion.[3]  We also reverse that portion of the trial court's judgment assessing all taxable costs against Oncor and remand that determination to the trial court for further action following a resolution of the matter of the damages as to tract CCN 313, the "Dunges Place."  As to the judgment of the trial court pursuant to the answers to jury questions 1, 2, 3, and 4, we affirm.

Mackey K. Hancock
Justice

---

[3] While the reversible error that we have found relates only to the jury's answer to jury question No. 6, we conclude that the jury's answer to jury question No. 5 is not severable from jury question No. 6 without unfairness to the parties.  *See* TEX. R. APP. P. 44.1(b).  Consequently, we reverse and remand the issues contained within jury questions No. 5 and 6 for new trial in the interest of justice.