**CITY OF DALLAS, Safeway Stores, Inc. and Eighth Safewall Associates, Appellants,**

**v.**

**Sandalyn Meredith McKASSON and Dustin Meredith, as Individuals, and Emmett P. Ball and Mark Martin, as Independent Executors of the Estates of Lee R. Kraft and Burdah Mae Kraft, Appellees.**

No. 05–85–00966–CV.

Court of Appeals of Texas, Dallas.

Jan. 8, 1987.

Rehearing Denied Feb. 26, 1987.

Analeslie Muncy, Carroll R. Graham, Donna M. Atwood, Pam Fandal Eudaric, Mike M. Tabor, Dallas, for appellants.

James P. Peden, III, Dallas, for appellees.

Before GUITTARD, C.J., and HOWELL and HOLLINGSWORTH [1], JJ.

ON MOTION FOR REHEARING

HOWELL, Justice.

On rehearing, we substitute the following revised opinion.

This is an appeal from a judgment non obstante veredicto setting aside an exchange of land between appellants, the City of Dallas and Eighth Safewall Associates;

---

1. Justice Cynthia Hollingsworth approved this opinion prior to the expiration of her term.

and voiding an ordinance authorizing the exchange on the ground that the exchange violated the public sale requirement of Article 5421c–12. Finding no error causing the rendition of an improper judgment, we affirm the judgment of the trial court.

The dispute concerns the cross-hatched parcel of land shown on the annexed diagram and identified in the key as "surplus." Abrams Road was formerly a north-south street in the City of Dallas. The City decided to place a curve in Abrams and to cause it to run approximately over the right-of-way of Prospect Avenue. Safewall owns the property at the northeast corner of Abrams and Prospect, and leases it to Safeway Stores, Inc. In order to shape a curve, it was necessary for the City to acquire from Safewall the shaded area marked on the key as "acquisition." The City also acquired by condemnation the entire triangular block bounded by Abrams, Prospect and Gaston Avenue and known as the "Skillern tract." The condemnation judgment recited that the Skillern tract was being acquired "for the purpose of widening, improving and extending Abrams Road *and for the acquisition of necessary greenspace ...*" (emphasis added).

Plaintiffs own the property at the northwest corner of Gaston and Prospect. All tracts involved are commercial property. It is a desirable feature of commercial property to be located directly upon a street corner.

The surplus tract is approximately twenty feet wide at its broadest point, approximately 145 feet long, and contains 2,131 square feet. It was formerly a part of the Skillern tract and constitutes a strip left between the old Prospect right-of-way and the new Abrams right-of-way. Upon completion of the new Abrams Road, the City planned to close Prospect Ave. In all probability, the City will soon dispose of the old Prospect right-of-way. If the plaintiffs' property is to maintain its favorable corner location, the plaintiffs must acquire both the old Prospect right-of-way and the surplus tract. Plaintiffs' desires came into conflict with those of Safewall, which wished to maintain the same square footage in its parking area as it had before the City laid claim to the acquisition tract. Otherwise, Safewall's operations would become a non-conforming use under the applicable zoning ordinances, a classification that could cause future operational problems.

Plaintiffs approached the City to purchase the surplus tract. However, the City decided to enter into an exchange agreement with Safewall whereby it would obtain the acquisition tract and Safewall would obtain the surplus tract. Plaintiffs sought cancellation of the deed conveying the surplus tract from the City to Safewall in this suit, alleging that the City and Safewall had violated the statute forbidding a political subdivision from selling or exchanging land without public notice and public sale. TEX.REV.CIV.STAT.ANN. art. 5421c–12, § 1 (Vernon Supp.1986).

The City conceded in the trial court that this procedure was not followed, but sought to justify the transaction under a statutory provision allowing right-of-way land to be exchanged for other right-of-way land without resort to the usual requirement of notice and bidding.[2] The jury responded in the negative to issues inquiring (1) if the surplus strip was acquired for purposes other than streets, rights-of-way or easements; (2) if the surplus strip was exchanged for less than fair market value; and (3) if the City had failed to obtain an appraisal.[3] Defendants argue that they

---

**2.** Section two of article 5421c–12 of the Revised Civil Statutes provides:

> Bid procedures and publication requirements ... shall not be applicable in the sale or disposal of real property interests belong-ing to a political subdivision [including] ... any land or interest therein which was originally acquired for the purpose of streets, rights-of-way or easements which the political subdivi-sion chooses to trade or exchange as consideration for other land acquired for streets, rights-of-way or easements, including transactions which may be partly for cash and partly by trade or exchange....

TEX.REV.CIV.STAT.ANN. art. 5421c–12, § 2 (Vernon Supp.1986).

**3.** The trial court placed the burden of proof on the plaintiffs to establish that the transaction

were entitled to prevail with these responses to the special issues. The trial court, however, rendered judgment notwithstanding the verdict, cancelled the deed of exchange, and invalidated the ordinance authorizing the exchange. The trial court's opinion accompanying its judgment stated that "the ... property exchanged by the City was not acquired solely for the purpose of streets, rights-of-way and easements." The court was apparently of the opinion that the acquisition was, as a matter of law, a dual-purpose acquisition. We agree.

■ Defendants first contend that the trial court erred in granting the judgment n.o.v. because more than a scintilla of evidence supported the jury's finding that the tract was not acquired for purposes other than right-of-way. To sustain the action of a trial court in granting a motion for judgment n.o.v., we must determine that no evidence supported the jury's findings. In making this decision, we must "review the record in the light most favorable to the jury findings considering only the evidence and inferences which support them, and rejecting the evidence and inferences contrary to the findings." *Williams v. Bennett*, 610 S.W.2d 144, 145 (Tex.1980); *Genzer v. City of Mission*, 666 S.W.2d 116, 119 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.).

We hold it to be undisputed that the Skillern tract was acquired for a dual purpose. The condemnation judgment indicated that the strip was acquired not only for the Abrams Road project but also for "necessary greenspace." The City's property management director confirmed that the acquisition was for right-of-way *and greenspace*. Defendants point to the testimony of one of the plaintiffs as some evidence that the surplus tract was, in fact, acquired solely for right-of-way. Suffice it to say that all that he could have known was what had been told to him during his negotiations with the City. Such testimony could not supplant the unequivocal and un-

retracted testimony of the responsible City official.

The issue, therefore, is not so much an evidentiary one as one involving statutory construction. The City contends that because right-of-way was one of the purposes for which the strip was acquired, the whole transaction falls within the exception of section 2(4). Plaintiffs argue that the statutory exception does not extend to dual-purpose acquisitions.

Defendants have emphasized throughout that the City's right-of-way drawings, as they existed on the date of the condemnation judgment, placed the surplus tract in the right-of-way of the new Abrams Road by-pass. From this proposition, defendants urge that there was some evidence to support the jury's negative answer to the inquiry if the surplus strip was acquired for purposes other than streets, rights-of-way or easements. However, our decision is not based upon fact finding; we base our decision upon the requirements of the law.

We must construe the law so as to protect the strong considerations of public policy behind the statutory requirement that public property be sold at public sale. When the City approached the condemnation court to acquire the entire Skillern tract, it was incumbent upon the City to notify the condemnation court of the purpose of the acquisition. The City had no right to exercise the right of eminent domain except pursuant to a valid public purpose. The City made no effort to notify the condemnation court which part of the tract being condemned was needed for greenspace and which part was needed for right-of-way. Instead, the City chose to proceed behind a generalization, advising the court without elaboration that the entirety was being taken for right-of-way. Pursuant to the City's pleadings and evidence, the condemnation court awarded the entire tract "for the purpose of the widening, improving and extending of Abrams Road and for the acquisition of necessary

did not meet any statutory exception. Plaintiffs argue in cross-points that the burden was erroneously placed. We need not decide this issue

because of our disposition of defendants' points of error.

greenspace." This was a dual-purpose acquisition as a matter of law.

We say this because the condemnation court licensed the City to devote any single specific square foot of the Skillern tract to either purpose. Within these purposes, the City received carte blanche to use the property as it chose. Inasmuch as the City was free to use *any* part of the property for *either* purpose, it follows that a dual-purpose acquisition was accomplished.

The fact that the City had drawings in its files reflecting a proposed use of the property would not appear to vary the terms of the acquisition; these terms were fixed by the condemnation judgment. However, we need not go so far on this record. The City has explained its failure of specificity before the condemnation court, i.e., its failure to advise the condemnation court of the particular use to be made of specific parts of the Skillern tract, by stating that its drawings in existence at the time of condemnation were "tentative" and "not final." This explanation was sufficient to tell *why* the City resorted to a dual-purpose condemnation. By the same measure, it was insufficient to identify any specific part of the premises as being taken exclusively for right-of-way or any other specific part as being taken exclusively for greenspace.

 In construing a statute, the cardinal principle is to effect the legislature's intent. *Knight v. International Harvester Credit Corp.*, 627 S.W.2d 382, 384 (Tex. 1982); *Minton v. Frank*, 545 S.W.2d 442, 445 (Tex.1976). When specific exceptions to a statute are made by the legislature, it is usually clear that no other exceptions are meant to apply. *Unigard Security Insurance Co. v. Schaefer*, 572 S.W.2d 303, 307 (Tex.1978); *State v. Richards*, 157 Tex. 166, 168, 301 S.W.2d 597, 600 (1957). An application of this rule requires us to read section 2(4) as applying only to the three express categories mentioned therein— streets, rights-of-way, and easements. Dual-purpose acquisitions are not exempt.

Such a construction is consistent with what we perceive to be the purpose of article 5421c–12. As the El Paso Court of Appeals observed:

> The purpose of the statute is the protection of public property, to throw a safeguard around land owned by a City in order that it might not be disposed of for less than true value and without prior knowledge by the citizens of the community.

*Bowling v. City of El Paso*, 525 S.W.2d 539, 541 (Tex.Civ.App.—El Paso), *writ ref'd n.r.e. per curiam*, 529 S.W.2d 509 (Tex.1975).

Surely, the protective function of the statute would be greatly diluted if we were to adopt the City's interpretation. A political subdivision could acquire and dispose of large amounts of land, escaping the notice and bid provision merely by including a small amount of right-of-way in the acquisition. For example, in the project in question, less than one-half of the condemned Skillern tract was actually placed within the new Abrams right-of-way. However, if the City's "dual purpose" argument were accepted, the entire 39,469 square feet would be exempted from the statutory requirement of public sale.[4]

 We perceive in article 5421c–12 a legislative effort to ensure that public lands be disposed of in a manner that will

---

**4.** The City contends that in the condemnation suit, it did not designate the portion of the Skillern tract which it desired for right-of-way because it had not made a final decision as to the exact location of the new Abrams right-of-way. The evidence indicates that in the City's original drawings, the new Abrams right-of-way was somewhat to the north and east of the right-of-way finally established. In such instance, the disputed "surplus" tract probably would not have come into existence. Plaintiffs argue that the redrawing of the right-of-way occurred during negotiations with Safewall, that the "surplus" tract was purposely created at the behest of Safewall in order to create a tract that might be exchanged for the "acquisition" tract, and that the real objective of these negotiations was to qualify Safewall as an abutting owner possessing preemptive rights to buy the soon-to-be abandoned Prospect right-of-way. See discussion at 176.

We note that the "surplus" tract is, by itself, too narrow to have any utilitarian value, for parking or otherwise. Unless Safewall could also acquire the old Prospect right-of-way, the

fully protect the citizenry. The policy underlying the act requires that the exceptions thereto be narrowly read. The exceptions must not be permitted to consume the rule lest the act fail its objectives. Therefore, we hold that a dual-purpose acquisition in which one of the purposes is not enumerated in section 2(4) does not qualify as an exempt exchange under article 5421c–12.[5] Defendants' opening points are overruled.

By their remaining points of error, defendants attack special issue four in which the jury found that it would be equitable to allow plaintiffs to purchase 55% of the former right-of-way of Prospect Avenue. Apparently, this issue was submitted for the purpose of determining an apportionment between abutting owners of that right-of-way if the City decided to sell under the statute calling for the sale of streets or alleys to abutting owners without advertising or bidding. TEX.REV.CIV.STAT. ANN. art. 5421c–12, § 2(2) (Vernon Supp. 1986). By crosspoint, plaintiffs conditionally ask that we render judgment on special issue four.

By cancelling the City's deed to defendants, the trial court has deprived Safewall of the status of abutting owner, and we affirm that action. The crosspoints urged by the plaintiffs have thereby been rendered moot. The trial court entered no order pursuant to the jury's answers to issue four, and we do not pass upon the points attending that issue.

The trial court's judgment is affirmed.

---

surplus tract would not connect to Safewall's property and would be of no conceivable use to Safewall.

5. This opinion does not suggest that greenspace can never fall within the section 2(4) exception. Rights-of-way can, of course, contain greenspace in medians and along the roadside. The land in question, however, was condemned for "right-of-way and greenspace." We take this to mean greenspace other than greenspace incorporated within the right-of-way itself.