## Office of the Attorney General
### State of Texas



**DAN MORALES**
ATTORNEY GENERAL

May 20, 1997

The Honorable Bill Ratliff
Chair, Finance Committee
Texas State Senate
P.O. Box 12068
Austin, Texas 78711-2068

Opinion No. DM-441

Re: Whether the City of Longview is authorized to transfer city-owned property to the University of Texas for the purpose of establishing a university campus (RQ-922)

Dear Senator Ratliff:

You ask whether the City of Longview (the "city") is authorized to transfer city-owned property to the University of Texas System ("UT") for the purpose of establishing a UT campus. We understand that in a 1979 bond election, the voters of the city approved a proposition authorizing a bond issuance for the purchase of land for parks. The city purchased the forty-eight acre site at issue in 1985 with bond proceeds. In May 1994, the city held a bond election which included a proposition for a bond issuance to improve the site as a park. The voters defeated the proposition. At this time, the property is undeveloped and has never been designated or used as a park by the city. The city does not have the funds to improve the site as a park.

First, you ask about section 253.001 of the Local Government Code, which requires the governing body of a municipality to obtain the approval of the voters before selling land owned, held, or claimed as a public park. This office addressed section 253.001 at length in Attorney General Opinion DM-232. In that opinion, we concluded, based on case law and prior attorney general opinions, that a city need not comply with section 253.001 in order to transfer property to another governmental agency having the power of eminent domain if the city and the governmental agency are in accord regarding the paramount public use of the property. *See* Attorney General Opinion DM-232 (1993) at 2 (citing *El Paso County v. City of El Paso*, 357 S.W.2d 783 (Tex. Civ. App.--El Paso 1962, no writ); *Kingsville Indep. Sch. Dist. v. Crenshaw*, 164 S.W.2d 49 (Tex. Civ. App.--San Antonio 1942, writ ref'd w.o.m.); Attorney General Opinions H-1256 (1978), H-108 (1973)). The UT board of regents has the power of eminent domain to acquire land that may be necessary and proper for UT purposes. *See* Educ. Code § 65.31(a). Therefore, we conclude on the basis of Attorney General Opinion DM-232 and the authorities discussed in that opinion that the city need not adhere to the procedures set forth in section 253.001 in order to convey the site to UT if the city and UT agree that use of the property as a university campus is the paramount public use of the property. Whether use of the property as a university campus is the paramount public use is a question of fact and is therefore beyond the purview of an attorney general opinion.

We limit the foregoing conclusion with two caveats. First, we note that our analysis of the application of section 253.001 assumes that UT has the authority to condemn the property.

Education Code section 65.31(a) does not expressly authorize UT to condemn property already devoted to a public use. Case law suggests that the authority to condemn property already devoted to a public use will not be implied when the condemnation will destroy the use to which the property has been devoted. *See Austin Indep. Sch. Dist. v. Sierra Club*, 495 S.W.2d 878, 882 (Tex. 1973) (citing *Sabine & E.T. Ry. Co. v. Gulf & I. Ry. Co.*, 46 S.W. 784 (Tex. 1898)). "The power will be implied, however, where the necessity is so great as to make the new enterprise of paramount importance to the public and it cannot be practically accomplished in any other way." *Id.* We believe UT would be well advised to make such findings, *prior* to entering into an agreement with the city regarding the paramount use of the property, in order to establish its authority to condemn the property. Of course, the ultimate determination whether the necessity to establish a UT campus in Longview is of paramount public importance and the campus cannot be practically accomplished in any other way involves questions of fact.

We also note that unlike the park land at issue in Attorney General Opinion DM-232 and the authorities cited there, the site at issue here was purchased with bond proceeds. It is a well-established principle that when the electorate has approved bonds for a particular purpose, the governing body that issued the bonds cannot arbitrarily decide to use the bond proceeds for another purpose. *Hudson v. San Antonio Indep. Sch. Dist.*, 95 S.W.2d 673 (Tex. 1936); *see also Black v. Strength*, 246 S.W. 79, 80-81 (Tex. 1922) (order calling bond election and establishing purpose for which bond proceeds will be used is contract with voters).[1] In the context of a dispute regarding the sale of mineral rights on land purchased by the City of Beaumont for an airport with bond proceeds, the Texas Supreme Court articulated the following principle:

> Since the city had acquired the land with the proceeds of municipal bonds which had been voted and issued for the purpose of acquiring an airport, the land thus purchased became dedicated to that purpose and the land could not be used for any other purpose which would interfere with its use as an airport until such use in whole or in part was lawfully abandoned by the city.

*City of Beaumont v. Moore*, 202 S.W.2d 448, 452 (Tex. 1947). A governmental agency that has called a bond election and thereafter obtained bond proceeds dedicated to a particular purpose may abandon a project only if conditions have so materially changed that proceeding with the project would be unwise and unnecessary. *Hudson*, 95 S.W.2d at 675. In addition, article 1015c, which authorizes a city to purchase, mortgage, and encumber various kinds of projects including parks, V.T.C.S. art. 1015c, § 1, provides that no project under section 1 of the article "shall ever be sold until such sale is authorized by a majority vote of the qualified voters of such city or town," *id.* § 2; *see also McCoy v. Williams*, 500 S.W.2d 178, 180-81 (Tex. App.--El Paso 1973, writ ref'd n.r.e.)

---

[1] This principle is reflected in articles 703a and 703b, V.T.C.S., which require a city that has sold bonds for a specific purpose that has been abandoned to hold an election to obtain voter approval to use unexpended funds for another purpose.

(suggesting that election requirement applies to any city park, not just one created under section 1 of article 1015c).[2]

Although the fact that the city obtained the site at issue with bond proceeds limits the authority of the city to use the land for other, non-park purposes, the relevant question here is whether this fact imposes a limitation on the authority of UT to condemn the land. This appears to be a question of first impression. On the one hand, a court might conclude that because the land was purchased with park bond proceeds, the city may not enter into an agreement with UT that another purpose is the paramount public use, thus excepting the conveyance from Local Government Code section 253.001, until it has discharged its commitment to the voters. On the other hand, a court might conclude that the reasoning of the cases and attorney general opinions addressing the strictures of section 253.001 and its statutory predecessor is equally applicable to bond election-related strictures: "[G]overning bodies with the power of eminent domain need not secure the consent of an electorate to obtain property they need for public purposes. . . . What [a county] might do by resort to condemnation proceedings, it can do by agreement with . . . [a city]." Attorney General Opinion H-1256 (1978) at 2 (citations omitted).

Under the latter rationale, a court might conclude that the fact that the city purchased the land at issue with bond funds does not affect the authority of UT to condemn the land and that what UT can do through condemnation proceedings it should be able to do by agreement with the city. Because the question whether the bond election-related limitations on the authority of the city to use the land for other, non-park purposes affects the authority of UT to condemn the land appears to be one of first impression, however, the city would be well advised to take steps to lawfully abandon use of the land as a park prior to entering into an agreement with UT that use of the property as a UT campus is the paramount public use.[3] The factual determination that conditions have so materially changed since the 1979 bond election that use of the property as a park would be unwise and unnecessary must be made by the governing body of the city in the first instance and is beyond the purview of an attorney general opinion.

You also ask about article III, section 52 of the Texas Constitution, which prohibits the city from granting "public money or thing of value" and requires that the city obtain adequate consideration when conveying public property, and section 272.001 of the Local Government Code, which generally requires certain political subdivisions, including cities, to sell land by a sealed bid procedure after public notice. Local Gov't Code § 272.001(a). These notice and bidding requirements do not apply, however, if real property is conveyed to a governmental entity that has the power of eminent domain. Id. § 272.001(b)(5). Subsection (b) of section 272.001 provides that

---

[2]"Appellees urge that Article 1015c is not applicable since there is no allegation that the park was created under that statute or that the land in question was encumbered under the provisions of the Act. We find no restriction in Section 2 requiring an election, which would limit the requirement for an election to only parks, encumbered under this Act." McCoy, 500 S.W.2d at 180-81.

[3]The city should also review its city charter for provisions that might affect its authority to enter into an agreement with UT. This office does not construe city charters and would not be able to advise the city regarding the effect of any such provisions.

real property may be conveyed to a governmental entity that has the power of eminent domain under this exception at not less than fair market value as "determined by an appraisal obtained by the political subdivision that owns the land," or, in the case of land owned by a home-rule municipality, by the price obtained at public auction. *Id.* § 272.001(b). Here, the city is authorized to convey the property to UT, a governmental entity that has the power of eminent domain, at not less than fair market value.

A brief submitted by the city states that the city can make a finding that a commitment by UT "to establish and construct a localized campus on the property would constitute sufficient consideration equivalent to the fair market value of the property." The city contends that if such a finding can be made, no cash consideration for the land is required, citing Attorney General Opinions H-1256 and H-108. We agree that such a finding would satisfy the dictates of article III, section 52 under the rationale of those opinions.[4] We are not convinced, however, that subsection (b) of section 272.001 authorizes a city to transfer real property to a governmental entity that has the power of eminent domain for the kind of consideration contemplated here.

As noted in Attorney General Opinion DM-232, the provisions of section 272.001 that permit a political subdivision to convey real property to a governmental entity that has the power of eminent domain without complying with its notice and bidding requirements but at not less than fair market value date from 1985,[5] some years after this office issued Attorney General Opinions H-1256 and H-108. In Attorney General Opinion DM-232, the City of Hereford indicated that it would find the paramount public use of the property to be the expansion of the hospital district and would convey the property to the hospital district for no cash consideration. We concluded that the city was not authorized to transfer the land to the hospital district for less than fair market value, suggesting that the indeterminate, nonmonetary consideration in the proposed transaction was impermissible. We continue to believe that suggestion is correct.

The term "fair market value' is not defined for purposes of section 272.001 and we define it according to its common usage. Gov't Code § 311.011 (Code Construction Act). "Fair market value" is generally defined as the *price* that a willing buyer, who desires to buy, but is under no obligation to buy, would pay to a willing seller, who desires to sell, but is under no obligation to sell. *City of Pearland v. Alexander*, 483 S.W.2d 244, 247 (Tex. 1972); *Atterbury v. Brison*, 871 S.W.2d 824, 828 (Tex. App.--Texarkana 1994, writ denied). We also note that the measure of damages in an eminent domain proceeding where an entire tract or parcel of land is condemned is "local market value." Prop. Code § 21.042(b). Cases construing this provision indicate that "market value" means a fixed, ascertainable sum. *Melton v. State*, 395 S.W.2d 426, 429 (Tex. Civ. App.--Tyler, 1965, writ

---

[4]*See* Attorney General Opinions H-1256 (1978) at 1-2 (transfers are not gratuitous for purposes of article III, section 52 if they are made on condition that thing transferred is used for public purposes benefiting the granting entity; question whether use of land would benefit city is question for city council in first instance), H-108 (1973) at 4 (transfer of land from city to state agency not gift under article III, section 52 because improvement of property and consequent benefit to city supply consideration).

[5]*See* Act of May 24, 1985, 69th Leg., R.S., ch. 367, 1985 Tex. Gen. Laws 1440, 1440.

ref'd, n.r.e.) ("Market value should be based upon reasonable cash value."); *Houston v. Charpoit*, 292 S.W.2d 677, 680-81 (Tex. Civ. App.--Galveston 1956, writ ref'd n.r.e.) (market value may be determined on basis of credit transaction, rather than on cash price of land).

In conclusion, fair market value is generally understood to mean a fixed, ascertainable sum. Because section 272.001 is intended "to ensure that public lands will be disposed of in a manner that will fully protect the citizenry," exceptions to its notice and bidding requirements, such as the exception permitting a political subdivision to convey real property to a governmental entity with the power of eminent domain without notice and bidding but at not less than fair market value, must be narrowly read. *City of Dallas v. McKasson*, 726 S.W.2d 173, 176-77 (Tex. App.--Dallas 1987, writ ref'd n.r.e.). We do not believe that a commitment by UT "to establish and construct a localized campus on the property" constitutes the kind of specific, ascertainable consideration required by section 272.001(b). As noted above, however, we believe that the proposed finding regarding consideration would satisfy the dictates of article III, section 52. For this reason, there does not appear to be any constitutional obstacle to amending legislation that would permit a city to convey real property to UT for such consideration.

Finally, you ask about Parks and Wildlife Code section 26.001(a), which provides that a municipality must comply with certain requirements before "approv[ing] any program or project that requires the use or taking of any public land designated *and used* prior to the arrangement of the program or project as a park." (Emphasis added.) You inform us that the site at issue has not been used as a park. Therefore, we conclude that section 26.001 of the Parks and Wildlife Code is inapplicable.

## S U M M A R Y

The City of Longview need not comply with Local Government Code section 253.001 in order to convey city-owned park land to the University of Texas System ("UT"), a governmental entity with the power of eminent domain, assuming the parties to the transaction take certain actions. The city and UT must agree that use of the property as a university campus is the paramount public use of the property. In addition, in order to establish its authority to condemn land already dedicated to a public use, UT should make a finding that the necessity to establish a UT campus in Longview is of paramount public importance and the campus cannot be practically accomplished in any other way. Furthermore, because the park land was purchased with bond proceeds, the city should also consider limitations on its authority resulting from the underlying bond election and, at the very minimum, take steps to abandon the bond project.

Local Government Code section 272.001(b) authorizes the city to convey the property to UT without complying with notice and bidding requirements, but at not less than fair market value. A commitment by UT "to establish and construct a localized campus on the property" would satisfy the dictates of article III, section 52 of the Texas Constitution, but does not constitute the kind of fixed, ascertainable consideration required by section 272.001(b). The city need not comply with Parks and Wildlife Code section 26.001 in order to convey an undeveloped tract purchased for but never used as a city park.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Mary R. Crouter
Assistant Attorney General