

OFFICE *of the* ATTORNEY GENERAL

GREG ABBOTT

December 23, 2002

The Honorable Jane Nelson
Chair, Nominations Committee
Texas State Senate
P.O. Box 12068
Austin, Texas 78711

Opinion No. GA-0004

Re: Whether the Euless Economic Development Corporation is "a governmental entity that has the power of eminent domain" under section 272.001(b)(5) of the Local Government Code (RQ-0568-JC)

Dear Senator Nelson:

Under section 271.001(b)(5) of the Local Government Code, the public notice and bidding requirements generally applicable to the sale or exchange of land owned by a political subdivision do not apply to "a real property interest conveyed to a governmental entity that has the power of eminent domain[.]" TEX. LOC. GOV'T CODE ANN. § 272.001(b)(5) (Vernon Supp. 2002). You ask about the transfer by the cities of Fort Worth and Dallas of jointly owned land to a private party in exchange for another tract owned by that party under section 272.001(b)(5) using as an intermediary the Euless Economic Development Corporation ("Euless EDC").[1] We first conclude that the Euless EDC is not a "governmental entity" for the purposes of section 272.001(b)(5). We next conclude that even if the Euless EDC were determined to be a "governmental entity," section 272.001(b)(5) does not authorize a political subdivision to transfer land to a private party by using a "governmental entity" as a pass-through.

We understand that your request is prompted by the desire of the cities of Dallas and Fort Worth and the Dallas-Fort Worth Airport to exchange municipally owned, undeveloped airport land for privately owned land that is more suitable for airport purposes. The cities own land that is a part of the Dallas-Fort Worth Airport (the "DFW Tract"), but which is not suitable for development of the airport. Request Letter, *supra* note 1, at 1. They wish to exchange the DFW Tract for another tract of land near the airport owned by a private party, "Mr. Bennett," that is more suitable for airport development. *See id.* Mr. Bennett is willing to exchange his tract for the DFW Tract because it would allow him to develop other property that he owns adjacent to the DFW Tract. *See id.* The

---

[1]*See* Letter from the Honorable Jane Nelson, Chair, Nominations Committee, Texas State Senate, to the Honorable John Cornyn, Texas Attorney General (June 26, 2002) enclosing letter from Paul Tomme, Legal Counsel, to Bob McFarland, Cribbs & McFarland, P.C. (May 1, 2002) (on file with Opinion Committee)[hereinafter Request Letter]. We understand that the opinion request is on behalf of the Dallas-Fort Worth Airport. Telephone conversation with Bob McFarland, Cribbs & McFarland, City Attorney for the City of Euless (September 17, 2002).

cities, as political subdivisions, however, must generally convey land through a competitive bidding procedure. *See id.*; *see also* TEX. LOC. GOV'T CODE ANN. § 272.001 (Vernon Supp. 2002). "The proposed exchange of property cannot be accomplished through competitive bidding, because the bidders cannot be limited to Mr. Bennett, nor can the bids be limited to the particular consideration the cities desire to receive." Request Letter, *supra* note 1, at 1. The cities, therefore, propose to accomplish the exchange under the section 272.001(b)(5) exception to the competitive bidding procedures by using the Euless EDC as an intermediary:

> [I]t is proposed that both parties convey their respective tracts to the Euless [EDC] and in a simultaneous transaction the Euless [EDC] would convey the tracts to the opposite parties, thus effecting the exchange. No additional consideration either way is contemplated, except that the Cities of Dallas and Fort Worth intend to retain an aviation easement over the DFW Tract.[2]

*Id.* at 2 (footnote added). However, "the question is whether the Euless [EDC] is 'a governmental entity that has the power of eminent domain', for purposes of Section 272.001(b)(5)." *Id.*

We look at section 272.001 of the Local Government Code. Subsection (a) of the statute requires a political subdivision, before selling or exchanging any land, to give notice to the general public of the offer to sell or exchange the land. *See* TEX. LOC. GOV'T CODE ANN. § 272.001(a) (Vernon Supp. 2002). The notice must include a description of the land "and the procedure by which sealed bids to purchase the land or offers to exchange the land may be submitted." *Id.* These provisions are intended to protect "public property, to throw a safeguard around land owned by a City in order that it might not be disposed of for less than true value and without prior knowledge by the citizens of the community." *Bowling v. City of El Paso*, 525 S.W.2d 539, 541 (Tex. Civ. App.—El Paso 1975, *writ ref'd n.r.e.*) (considering predecessor statute to section 272.001).

The general notice and the bidding requirements of section 272.001(a) do not apply to specifically described conveyances: permanent school fund land conveyances authorized by the legislature, *see* TEX. LOC. GOV'T CODE ANN. § 272.001(e) (Vernon Supp. 2002); land transfers to "an entity" for the development of low-income or moderate-income housing, *see id.* § 272.001(g); transfers of municipally owned, lake-side land to the individuals leasing the property, *see id.* § 272.001(h); conveyances of lands acquired with community development block grants to private for-profit or nonprofit entities for carrying out purposes of the grant, *see id.* § 272.001(i); transfers of lands to an institution of higher education for educational purposes, *see id.* § 272.001(j); or conveyances of municipal utility lands, *see id.* § 272.001(k). The requirements also do not apply to the land and property interests described in subsection (b):

---

[2]We understand that the two tracts have been appraised and the value of the private tract exceeds the value of the municipally owned tract. Telephone conversation with Bob McFarland, Cribbs & McFarland, City Attorney, City of Euless (September 17, 2002).

(1) narrow strips of land, or land that because of its shape, lack of access to public roads, or small area cannot be used independently under its current zoning or under applicable subdivision or other development control ordinances;

(2) streets or alleys, owned in fee or used by easement;

(3) land or a real property interest originally acquired for streets, rights-of-way, or easements that the political subdivision chooses to exchange for other land to be used for streets, rights-of-way, easements, or other public purposes, including transactions partly for cash;

(4) land that the political subdivision wants to have developed by contract with an independent foundation;

*(5) a real property interest conveyed to a governmental entity that has the power of eminent domain*; or

(6) a municipality's land that is located in a reinvestment zone designated as provided by law and that the municipality desires to have developed under a project plan adopted by the municipality for the zone.

*Id.* § 272.001(b) (emphasis added).

Because the power of eminent domain informs our discussion of section 272.001(b)(5) of the Local Government Code, we also briefly review the delegation of that power. Article I, section 17 of the Texas Constitution provides that without consent, "no person's property shall be taken . . . for or applied to public use without adequate compensation being made." TEX. CONST. art. I, § 17. Not only does this provision require that property may be taken only for public use; it also prohibits taking property for private use. *See Maher v. Lasater*, 354 S.W.2d 923, 924 (Tex. 1962); *Mercier v. MidTexas Pipeline Co.*, 28 S.W.3d 712, 716 (Tex. App.—Corpus Christi 2000, pet. denied). The power of eminent domain delegated by the constitution resides in the legislature, and the legislature may grant the authority to exercise that power to governmental and non-governmental entities so long as the exercise is for a public use. *See Mercier*, 28 S.W.3d at 716; *Maberry v. Pedernales Elec. Coop.*, 493 S.W.2d 268, 269 (Tex. Civ. App.—Austin 1973, writ ref'd n.r.e.). Under the "use by the public" approach adopted by Texas courts, "property can only be taken when 'there results to the public some definite right or use in the business or undertaking to which the property is devoted.'" *City of Arlington v. Golddust Twins Realty Corp.*, 41 F.3d 960, 965 (5th Cir. 1994) (quoting *Borden v. Trespalacios Rice & Irrigation Co.*, 86 S.W. 11, 14 (Tex. 1905), *aff'd per curiam*, 204 U.S. 667 (1907)).

With this background, we return to the proposed DFW Tract exchange. Before addressing your specific question, we note that in the transaction described to us, "no additional consideration either way is contemplated." *See* Request Letter, *supra* note 1, at 2. *But see, supra* note 2. However, unlike the other excepted property interests in section 272.001, the land and interests described in subsection (b)(5) may not be conveyed or exchanged for less than the fair market value of the land or interest. *See* TEX. LOC. GOV'T CODE ANN. § 272.001(b)(5) (Vernon Supp. 2002); *see also* Tex. Att'y Gen. Op. No. DM-441 (1997) at 4 (concluding that section 272.001(b)(5) requires fixed, ascertainable consideration).

Turning to your specific question, we conclude that in section 272.001(b)(5), "governmental entity" refers to the state, a political subdivision of the state, or an irrigation or water district created by law. The Code Construction Act directs that "[ w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage," unless they have acquired a technical meaning by legislation or otherwise. TEX. GOV'T CODE ANN. § 311.011 (Vernon 1998). Section 272.001(b)(5) does not define "governmental entity." *See* TEX. LOC. GOV'T CODE ANN. § 272.001 (Vernon Supp. 2002). And we have found no judicial construction of that term as used in section 272.001(b)(5) or in another context with general application. Finally, there is no helpful dictionary definition to which we may resort to for the "common usage" of the term. Accordingly, we look to the meaning attributed to that term by the legislature in a closely related context, chapter 21 of the Property Code, governing all eminent domain proceedings. *Cf. Brookshire v. Houston Indep. Sch. Dist.*, 508 S.W.2d 675, 677 (Tex. Civ. App.—Houston [14th Dist.] 1974, no writ) ("When the Legislature defines a term in one statute and uses the same term in relation to the same subject matter in a later statute, it will be presumed that the latter use of the term is in the same sense as previously defined."). Chapter 21, the substance of which was adopted prior to the enactment of section 272.001(b)(5),[3] indicates that governmental entities with the power of eminent domain are the state, a political subdivision of the state, or an irrigation, water, water improvement, or water power control district "created by law." *See* TEX. PROP. CODE ANN. §§ 21.011 (governing procedure), .012 (filing of condemnation petition), .021 (deposit of damages and cost and filing of bond during litigation) (Vernon 1984). Chapter 21 provides for the filing of condemnation petition by corporations; the United States; *and* the state, a political subdivision of the state, or an irrigation, water, water improvement, or water power control district "created by law." *See id.* § 21.012. However, only entities falling in the latter categories are excepted from the requirement that the amount of damages or cost awarded to the property owner be paid or deposited with the court and that a bond securing further costs be executed in order to take possession of the property pending further litigation. *See id.* § 21.021 (state, county, municipal corporation, or irrigation or water district not required to make deposit or execute bond); *see also id.* § 21.0111 (Vernon Supp. 2002) (only governmental entities with power of eminent domain required to disclose appraisal records).

---

[3]The legislature enacted section 272.001(b)(5) of the Local Government Code in 1985. *See* Act May 24, 1985, 69th Leg., R.S., ch. 367, § 1, 1985 Tex. Gen. Laws 1440, 1440. The legislature adopted the substance of chapter 21 of the Property Code, including sections 21.011-.012 and 21.021 on which we rely, prior to 1961. *See* TEX. PROP. CODE ANN. §§ 21.011-.012, .021 (Vernon 1984) (Historical Notes); Act of Feb. 21, 1934, 43d Leg., 2d C.S., ch. 37, §§ 1-2, 1934 Tex. Gen. Laws 89-90, *repealed by*, Act of May 26, 1983, 68th Leg., R.S., ch. 576, § 6, 1983 Tex. Gen. Laws 3475, 3729.

The Euless EDC is a nonprofit industrial development corporation established under section 4B of the Development Corporation Act of 1979, TEX. REV. CIV. STAT. ANN. art. 5190.6 (Vernon 1987 & Supp. 2002). An "industrial development corporation" is "a corporation created and existing under the provisions of [article 5190.6] as a constituted authority for the purpose of financing one or more projects." *Id.* § 2(10) (Vernon Supp. 2002). Article 5190.6 authorizes the creation of an industrial development corporation under the statute's general provisions or under sections 4A and 4B of the statute. *See id.* art. 5190.6 (Vernon 1987 & Supp. 2002). Section 4B of article 5190.6 authorizes an eligible city to "create" and utilize a development corporation to finance authorized "projects" on behalf of the city. *See id.* § 4B(b) (Vernon Supp. 2002). The city's governing body appoints the section 4B development corporation's board of directors. *See id.* § 4B(c). The section 4B development corporation has the powers and is subject to the limitations of a corporation created under other provisions of article 5190.6, but to the extent of any conflict, section 4B prevails. *See id.* § 4B(b). The section 4B corporation, while "created" under the auspices of a city, is nonetheless, pursuant to the general provisions of article 5190.6, a nonprofit corporation incorporated by private individuals pursuant to the Texas Non-Profit Corporation Act, TEX. REV. CIV. STAT. art. 1396-1.01 to -70.01 (Vernon 1997 & Supp. 2002). *See id.* §§ 4(a), 5-6 (Vernon 1987), 23 (Vernon Supp. 2002).

A section 4B development corporation is not a political subdivision or a political corporation notwithstanding its access to a dedicated tax and the authority to exercise eminent domain power. Under section 4B, a city may levy and collect a sales and use tax "for the benefit of the corporation," *id.* § 4B(d) (Vernon Supp. 2002), and the corporation "may exercise the power of eminent domain" subject to the city's approval and "in accordance with and subject to the laws applicable" to the city, *id.* § 4B(j) (Vernon Supp. 2002). Under the general provisions of article 5190.6, however, a city that creates a development corporation "shall never delegate to a corporation any of such [city's] attributes of sovereignty, including the power to tax, the power of eminent domain, and the police power." *Id.* § 22 (Vernon Supp. 2002). Indeed, a development corporation's exercise of powers is subject "at all times to the control of the governing body of the [city] under whose auspices the corporation was created." *Id.* § 23 (a)(12) (Vernon Supp. 2002). And although the corporation is "a constituted authority and an instrumentality [for the purposes of section 103 of the Internal Revenue Code] and shall be authorized to act on behalf of" the creating city, *id.* § 22, the corporation is "not intended to be and shall not be a *political subdivision or a political corporation* within the meaning of the constitution and laws of the state[.]" *Id.* § 22 (emphasis added).

Relying on section 22 of article 5190.6—that a development corporation is not a political subdivision or a political corporation—this office has concluded that a section 4B corporation is not a political subdivision subject to the public notice and bidding requirements of section 272.001(a) of the Local Government Code. *See* Tex. Att'y Gen. Op. No. JC-0109 (1999); *see also* Tex. Att'y Gen. Op. No. JC-0032 (1999) (concluding, on basis of section 22, that section 4A development corporation is not itself a political subdivision subject to prevailing wage law, Government Code chapter 2258). This office has also concluded, based on a review of section 4B and the general provisions of article 5190.6, that section 4B development corporation is not "any other 'local governmental entity'" subject to the conflict of interest provision of Local Government Code chapter 171. *See* Tex. Att'y Gen. Op. No. JC-0338 (2001). Finally, relying on section 22, this office has

determined that because an industrial development corporation "bears none of the 'attributes of sovereignty,'" a member of the corporation's board of directors is not a public officer for the purposes of the common law doctrine of incompatibility. *See* Tex. Att'y Gen. Op. No. JC-0547 (2002) at 2.

The Euless EDC, as a section 4B industrial development corporation, is not a "governmental entity" for the purposes of section 272.001(d)(5) of the Local Government Code. As we have previously concluded, "governmental entity" under section 272.001(d)(5) refers to the state, a political subdivision of the state, or an irrigation or water district created by law. The Euless EDC is clearly not the state or an agency of the state. *See Guar. Petroleum Corp. v. Armstrong*, 609 S.W.2d 529, 529 (Tex. 1980) (departments or agencies of state exercise jurisdiction throughout state; governing bodies are elected in statewide elections or are appointed by statewide officials). It is not an irrigation or water district. *See generally* TEX. REV. CIV. STAT. ANN. art. 5190.6 (Vernon 1987 & Supp. 2002). Nor is it a political subdivision of the state or a local governmental entity. *See id.* § 22 (Vernon Supp. 2002); Tex. Att'y Gen. Op. No. JC-0109 (1999); Tex. Att'y Gen. Op. No. JC-0338 (2001).

Furthermore, even if a court were to determine that a section 4B development corporation is a governmental entity for the purposes of section 272.001(b)(5), we do not believe that section 272.001(b)(5) authorizes the type of transfer contemplated here. In the transaction described, the Euless EDC is merely a pass-through for the transfer of the property to the private party for his private use. Thus, the essential question presented here is whether section 272.001(b)(5) authorizes a political subdivision to transfer its land to a private party using another governmental entity as a pass-through.

In our opinion, section 272.001(b)(5) does not authorize transfer of municipally owned land to a private party for that party's private use utilizing a governmental entity as a pass-through. In construing a statute, the primary objective is to effect the legislature's intent, which like a court, we must endeavor to discover from the actual language the legislature used. *See Mitchell Energy Corp. v. Ashworth*, 943 S.W.2d 436, 438 (Tex. 1997). When specific exceptions to a statute are made by the legislature, it is usually clear that no other exceptions are intended. *See Unigard Sec. Ins. v. Schaefer*, 572 S.W.2d 303, 307 (Tex. 1978). Moreover, because section 272.001 is intended to "ensure that public lands be disposed of in a manner that will fully protect the citizenry," exceptions to the statute must be read narrowly. *City of Dallas v. McKasson*, 726 S.W.2d 173, 176-77 (Tex. App.—Dallas 1987, writ ref'd n.r.e.); Tex. Att'y Gen. Op. No. DM-441 (1997) at 3. The exceptions to the statute "must not be permitted to consume the rule lest the act fail its objectives." *City of Dallas*, 726 S.W.2d at 177. These principles of statutory construction require us to read the section 272.001(b)(5) exception to apply only to real property transfers to an entity expressly mentioned therein, a governmental entity and, by logical extension, for the governmental entity's public purposes for which the governmental entity may condemn the real property. *See Mercier*, 28 S.W.3d at 716 (property may be taken only for public use); *see also City of Arlington*, 41 F.3d at 965 (property can only be taken when there results to public some definite right or use in business or undertaking to which the property is devoted). Section 272.001(b)(5) does not exempt a transfer to a private party for a private use.

Our narrow construction of section 272.001(b)(5) is consistent with legislative history. This section was not intended to allow transfers of public property to private parties or for private use. The section 272.001(b)(5) exception for transfer of real property interest to a governmental entity is intended to codify Attorney General Opinion M-788's determination that the exchange of real property between two political subdivisions for their public purposes, pursuant to which publicly owned land is changed from one public use to another, is not subject to the public notice and bidding requirements of the predecessor statute to section 272.001. *See Hearing on Tex. H.B. 917 Before the Senate Comm. on State Affairs*, 69th Leg., R.S. (May 15, 1985) (tape available at Lorenzo De Zavala State Archives and Library); Tex. Att'y Gen. Op. No. M-788 (1971). Senator Truan, the author of House Bill 917, which amended the statute, explained the bill as follows:

> The City of Corpus Christi requested this legislation. They wish to convey land between the city which is home-ruled and the Corpus Christi Independent School District. Present law requires the city to bid and post public notice requirements but the Attorney General in opinion M-788 has indicated that such bid and posting requirements are not necessary between a home-rule city and an independent school district. This bill codifies that opinion into law. . . . And that's all the bill does.

*Hearing on Tex. II.B. 917 Before the Senate Comm. on State Affairs*, 69th Leg., R.S. (May 15, 1985) (tape available at Lorenzo De Zavala State Archives and Library); *see also* Tex. Att'y Gen. Op. No. M-788 (1971).

Attorney General Opinion M-788 relied on the judicially recognized proposition that political subdivisions that can condemn each others' lands for a "paramount" public use or need should be able to agree on such use or need without instituting condemnation proceedings. *See* Tex. Att'y Gen. Op. No. M-788 (1971). *El Paso County v. City of El Paso*, 357 S.W.2d 783 (Tex. Civ. App.—El Paso 1962, no writ), on which Attorney General Opinion M-788 relied, dealt with the transfer of county park land to the city for the construction of a city firemen training facility and a water tower. The *El Paso County* court determined that a statute requiring a county to sell its land at a public auction and a statute relating to abandonment of county parks applied whenever a political subdivision subject to those statutes disposed of any public land to a private party, "but not where such [a] political subdivision with the power of eminent domain . . . chooses to deal with its opposite number and reach an agreement as to the change of public use, rather than resort to" long and expensive litigation in the courts. *El Paso County*, 357 S.W.2d at 787. In *Kingsville Independent School District v. Crenshaw*, 164 S.W.2d 49 (Tex. Civ. App.—San Antonio 1942, writ ref'd w.o.m.), on which the *El Paso County* court and Attorney General Opinion M-788 relied, the court held that a city could transfer land used as a city park to a school district without resorting to condemnation proceedings where the city and the school district agreed that the land was necessary for school purposes. *See Kingsville Indep. Sch. Dist.*, 164 S.W.2d at 50-51. Significantly, both cases involved the transfer of land for the public purpose of the transferee political subdivision for which the political subdivision could condemn the land through eminent domain proceedings.

In the circumstances before us, the land sought to be transferred would not be used for a public purpose of the "governmental" transferee. Here, the ultimate intended user of the DFW Tract is the private party who would use the land for his private purposes. Even assuming that the Euless EDC were a "governmental entity" under section 272.001(b)(5) of the Local Government Code, the transfer of the DFW Tract would not be for public use or for a public purpose of the Euless EDC. It would not be for a purpose for which the Euless EDC could condemn the land under its enabling legislation, article 5190.6 of the Revised Civil Statutes. *See City of Arlington*, 41 F.3d at 965 (one of tests for public use is whether property taken is reasonably essential to successful completion of public project); *see also Maberry*, 493 S.W.2d at 270 (exercise by a corporation of power of eminent domain conferred by state is special in character, and there must be showing of strict compliance with law authorizing taking).

In sum, in response to your specific question—whether the Euless EDC is a "governmental entity" for purposes of section 272.001(b)(5)—we conclude that it is not. Furthermore, even if the Euless EDC were determined to be a "governmental entity," section 272.001(b)(5) does not authorize a political subdivision to transfer its land to a private party using a governmental entity merely as an intermediary to "effect" or "accomplish" the transfer.

## S U M M A R Y

Section 272.001(b)(5) of the Local Government Code exempts "a real property interest conveyed to a governmental entity that has the power of eminent domain" from the public notice and bidding requirements generally applicable to the sale or exchange of land owned by a political subdivision. The Euless Economic Development Corporation, a nonprofit industrial development corporation created under the Development Corporation Act of 1979, article 5190.6 of the Revised Civil Statutes, is not a "governmental entity" for the purposes of section 272.001(b)(5) of the Local Government Code. Furthermore, section 272.001(b)(5) does not authorize a political subdivision to transfer land to a private party by using a "governmental entity" as a pass-through.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General, Opinion Committee